Michael K. Kennedy (004224)
**GALLAGHER & KENNEDY, P.A.**
2575 East Camelback Road
Phoenix, Arizona  85016-9225
P:  (602) 530-8000
F:  (602) 530-8500
Email:  mkk@gknet.com

Attorneys for Plaintiff *Gallagher & Kennedy, PA*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GALLAGHER & KENNEDY, PA, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CITY OF PHOENIX, a political subdivision of the State of Arizona; Maricopa County, a political subdivision of the State of Arizona; The United States Department of Defense, an agency of the United States responsible for the United States Air Force; Action Fabricating of Arizona, Inc., a Minnesota corporation; Alcatel-Lucent USA Inc., a Delaware corporation; ArvinMeritor, Inc., a Delaware corporation; Brake Supply Company, Inc., an Indiana corporation; Cooper Industries LLC, a Delaware limited liability company; D-Velco Manufacturing of Arizona, Inc., operating as a subsidiary of Northstar Aerospace Inc., an Arizona corporation; Holsum Bakery, Inc., an Arizona corporation;  Kinder Morgan Energy Partners, L.P., a Delaware corporation; Laundry & Cleaners Supply, Inc., an Arizona corporation; Milum Textile Services Co., an Arizona corporation; NorthAmerican Terminals Management, Inc., a Delaware corporation; NUCOR Corporation, a Delaware corporation; Phoenix Heat Treating, Inc., an Arizona corporation; Phoenix Industrial Properties, Inc., a Delaware corporation; Phoenix | |

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225

Newspapers, Inc., an Arizona corporation; Praxair, Inc., a Delaware corporation; Prudential Overall Supply, a California corporation; Research Chemicals Incorporated, a Delaware corporation; Rexam Beverage Can Company, a Delaware corporation; Romic Environmental Technologies Corporation, an Arizona corporation; Schuff Steel Company, a Delaware corporation; Shell Oil Company, a Delaware corporation; Times Fiber Communications, Inc., a Delaware corporation; Union Oil Company of California, a California corporation; Walker Power Systems, Inc., an administratively dissolved Arizona corporation; West Monroe Property, Inc., an Arizona corporation; World Resources Company, a Wyoming corporation; and YRC Inc., a Delaware corporation,

Defendants.

Plaintiff Gallagher & Kennedy, P.A. ("G&K") alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought under Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*. ("CERCLA"), for the recovery of costs incurred by G&K in responding to the release or threatened release of hazardous substances into soil and groundwater that impacts or threatens to impact public health, welfare and the environment and groundwater wells owned and operated by the Roosevelt Irrigation District ("RID") from facilities owned or operated or formerly owned or operated by Defendants, who are jointly and severally liable for those costs under CERCLA.  G&K also seeks a declaration of Defendants' liability pursuant to 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2) to recover further response costs.

## JURISDICTION AND VENUE

2. This action arises under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

3. This Court has jurisdiction over this action pursuant to: 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201(a) (declaratory judgment), and 42 U.S.C. § 9613(b) (Section 113(b) of CERCLA).

4. Venue lies in the Phoenix Division of the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. §§ 9607(a) and 9613(b).  The claims asserted in this complaint arose in Maricopa County, Arizona; the releases and threatened releases of hazardous substances have occurred and are occurring in Maricopa County, Arizona; and the response costs were incurred or will be incurred by G&K in Maricopa County, Arizona.

5. Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(l), G&K has provided copies of this complaint to the Attorney General of the United States and to the Administrator of the Environmental Protection Agency.

**PARTIES**

**A. Plaintiff**

6.  G&K is a professional association organized and operating in Arizona.

7. G&K is a "person" as that term is defined in Section 101(21) of CERLCA, 42 U.S.C. § 101(21).

8. G&K has the legal right to pursue the investigation, development and implementation of response actions to protect public health, welfare and the environment and to restore RID's wells and water supply from the release and threatened release of hazardous substances.[1]

---

[1] Beginning on October 3, 2008, G&K entered into the G&K-RID engagement letter with RID to serve as RID's agent in securing, on behalf of RID, the response actions and technical and legal services necessary to protect public health, welfare and the environment and to protect and restore RID's wells and water supply in the WVBA WQARF Site.  On October 8, 2009, RID entered into an Agreement to Conduct Work with the Arizona Department of Environmental Quality ("ADEQ") ("Agreement to Conduct Work") in which RID obligated itself to investigate, develop and implement the necessary response actions subject to the oversight of ADEQ.  As described in more detail below, G&K, on behalf of RID and pursuant to the Agreement to Conduct Work, has incurred costs to investigate, develop and implement response actions to address groundwater contaminated with hazardous

1

**B. Defendants**

2    9. Each Defendant identified in this complaint is a "person" as that term is defined

3    in Section 101(21) of CERLCA, 42 U.S.C. § 101(21).

4    10. Each Defendant is a current or former "owner or operator" of a "facility"

5    within the meaning of Sections 101(9) and (20) of CERCLA, 42 U.S.C. §§ 9601(9) and

6    (20).

**GENERAL ALLEGATIONS**

7

8    11. Over 30 of RID's groundwater supply wells, located within the West Van

9    Buren Area ("WVBA") Water Quality Assurance Revolving Fund ("WQARF") Site, have

10   substances, including the known human carcinogen TCE, in order to protect public health, welfare and the
     environment and to protect and restore RID's wells and water supply.  ADEQ has approved the response actions

11   developed by G&K, on behalf of RID.

12   Pursuant to the original 2008 G&K-RID engagement letter, G&K represented RID in its cost recovery action that was
     filed on July 23, 2010 against dozens of defendants.  After a non-appealable disqualification order was entered on

13   August 26, 2011, prohibiting G&K from representing RID against five of the eight Conflict Defendants in the RID
     cost recovery action, and additional subsequent disqualification motions, G&K voluntarily moved to fully withdraw

14   from representation of RID in the cost recovery action on May 20, 2013 (granted on May 21, 2013).  This voluntary
     withdrawal was to allow RID's cost recovery action to proceed forward on the merits and fulfill the primary

15   objectives of CERCLA Section 107 action (*i.e.*, to allow quick responses to hazardous substances and ensure the
     polluters pay).  G&K, on behalf of RID, has continued to incur costs to develop and implement necessary response

16   actions approved by ADEQ to address the contaminated groundwater and prohibit environmental injustice to the
     local residents from the uncontrolled exposure to hazardous substances.  To date, the ADEQ-approved response

17   actions have resulted in 6.633 billion gallons of contaminated groundwater being treated with fail-safe technology
     and the removal of over 2,800 pounds of hazardous volatile organic compounds ("VOCs") (based on seasonal

18   pumping and authority to operate the wellhead treatment systems in accordance with ADEQ's approvals).

19   Additional motions for disqualification were filed attempting to prohibit G&K from representing RID
     administratively before ADEQ regarding the development and implementation of the necessary response actions.  On

20   September 30, 2015, Judge Ezra in the RID cost recovery action held that "G&K's representation of RID before the
     ADEQ does not violate the Court's [August 26, 2011] disqualification order" and that "the actions taken by RID to

21   remediate contaminated groundwater, and the costs incurred in doing so-appears unlikely to reveal Conflict
     Defendants' confidential information."  On November 22, 2016, the Court issued a non-appealable order stating that

22   most of the response costs were incurred by G&K and not RID.   The Court declared that "it is undisputed that RID's
     attorneys, G&K, paid the [approximately $15 million] response costs presently at issue."   Additionally, the Court

23   reconfirmed its prior holding that "the actions taken by RID to remediate contaminated groundwater, and the [G&K]
     costs incurred in doing so," are not adverse to G&K's former clients and not likely to reveal confidential information.

24   As a result of the Court's November 22, 2016 Order and to avoid any potential statute of limitations, G&K is timely
     filing this initial action for recovery of some of the response costs G&K, on behalf of RID, has incurred to

25   investigate, develop and implement the ADEQ-approved response actions to address the contaminated groundwater
     impacting and threatening to impact public health, welfare and the environment, and RID's wells and water supply,

26   reserving the right under 42 U.S.C. § 9613(g)(2) to bring subsequent cost recovery actions for other incurred
     response costs.

4

been impacted and threatened by hazardous substances, including, but not limited to, trichloroethene ("TCE"), also known as "trichloroethylene"; tetrachloroethene ("PCE"); 1,1,1-trichloroethane ("TCA"); 1,1-dichloroethane ("1,1-DCA"); 1-1-dichloroethene ("1,1-DCE"); 1,2-dichloroethane ("1,2-DCA"); cis-1,2-dichloroethene ("cis-1, 2-DCE"); and methyl tertiary butyl ether ("MTBE").

12. G&K did not release TCE, PCE, TCA, 1,1-DCA, 1,1-DCE, 1,2-DCA, cis-1,2-DCE, MTBE or any other hazardous substance into RID's wells.  The hazardous substances in and threatening RID's groundwater wells and water supply are solely the result of releases from facilities owned and operated by other parties, including Defendants, and the flow of groundwater into and within the WVBA WQARF Site.

**Background of WVBA WQARF Site**

13. In 1986, the Arizona legislature created the Arizona Department of Environmental Quality ("ADEQ") and the WQARF program to address releases and contamination from hazardous substances to ensure compliance with applicable environmental standards.  Arizona law mandates that ADEQ adopt water quality standards to preserve and protect the quality of all waters for all present and reasonably foreseeable future uses.  As a result, ADEQ has adopted enforceable numeric and narrative aquifer water quality standards to protect all of Arizona's aquifers that are classified, pursuant to state law, for drinking water protected use.

14. After groundwater contamination was detected at a facility operated by Union Oil in west Phoenix, ADEQ began conducting investigations in 1987 that led to the listing of the WVBA WQARF Site on ADEQ's WQARF Registry of contaminated sites.  In furtherance of its investigation of the WVBA WQARF Site, ADEQ conducted extensive field work and analysis (including groundwater and soil sampling and industrial surveys), issued interim reports and public notices and initiated enforcement proceedings against certain current and former owners and operators of facilities potentially responsible for

soil and groundwater contamination.   As part of ADEQ's ongoing WVBA WQARF Site investigation, the Arizona Department of Health Services ("ADHS") completed a health risk assessment in 1992.  The study concluded that there would be significant health effects from domestic consumption of groundwater containing the hazardous substances at concentrations similar to those found by ADEQ in wells located within the WVBA WQARF Site.

15. After active discussions with ADEQ throughout the Fall of 2008 and Winter of 2009 regarding possible response actions by ADEQ to address the groundwater contamination impacting and threatening to impact RID's wells, RID met with ADEQ on February 5, 2009, where it was determined that RID would have to pursue its own response actions to protect and restore the water quality of RID's groundwater supply wells.  Therefore, RID voluntarily developed a response action to address the impact and threatened impact to its wells, as there would be no timely response from ADEQ forthcoming to address the contamination and threatened contamination of RID's wells because of the State's financial difficulties.

16. After 20 years of investigations of the WVBA WQARF Site, ADEQ issued its Draft Remedial Investigation Report, West Van Buren WQARF Registry Site (October 2008) ("Draft RI Report").  ADEQ concluded that groundwater contamination in the WVBA, which as alleged above includes the groundwater underlying and impacting RID's water supply wells, "is the areal projection of the western portion of a large commingled plume of contaminated groundwater in Phoenix, Arizona" and that "[c]ontributors to this commingled plume include industrial facilities and contaminated groundwater from the east, as regional groundwater flow is generally westward."

17. More specifically, the Draft RI Report concludes that "[g]roundwater contamination enters the WVBA from the east from the Motorola 52nd Street Federal Superfund Site OU3 area" and that "[c]ontaminated groundwater also appears to enter the

WVBA from the north in the central portion of the site from the West Osborn Complex ("WOC") WQARF Registry Site."

18. Thus, the contamination and threatened contamination of RID's wells is associated with facilities located within three regional sites which have been identified under CERCLA, 42 U.S.C. §§ 9601 to 9675, or Arizona's WQARF program, A.R.S. §§ 49-281 to 298. The three regional sites are as follows:

a. Motorola 52nd Street Superfund Site ("M-52 Superfund Site"). The M-52 Superfund Site is listed on EPA's National Priorities List, 40 C.F.R. pt. 300, App. B. M-52 has been subdivided into three operable units ("OUs"). According to EPA, the approximate boundaries of OU1 are Palm Lane to the north, 52nd Street to the east, Roosevelt Street to the south and 44th Street to the west. According to EPA, the approximate boundaries of OU2 are Roosevelt Street to the north, 44th Street to the east, Buckeye Road to the south and 18th Street to the west. According to EPA, the approximate boundaries of OU3 are McDowell Road to the north, 20th Street to the east, Buckeye Road to the south and 7th Avenue to the west. EPA has investigated and identified certain of the Defendants as potentially responsible parties ("PRPs") and sources of hazardous substances in the M-52 Superfund Site. In its Findings of Fact entered in connection with the M-52 CERCLA enforcement proceedings, the EPA found that "[g]roundwater contaminated with VOCs from … potential sources within OU1 and OU2 commingle and flow westward into OU3, where it commingles with contamination from sources within OU3."[2]

b. West Van Buren Area WQARF Site. The WVBA WQARF Site is listed on ADEQ's WQARF Registry established under A.R.S. § 49-287.01(D). The approximate boundaries of the WVBA WQARF Site are McDowell Road to the north, 7th Avenue to

---

[2] *In the Matter of: Motorola 52nd Street Superfund Site Operable Unit 3*, USEPA Region 9, Docket No. 2008-17, ¶ 13.

the east, Lower Buckeye Road to the south and beyond 75th Avenue to the west. ADEQ has investigated and issued a draft and final Remedial Investigation Report, which identifies certain of the Defendants as sources of hazardous substances in the WVBA WQARF Site.

c. <u>West Central Phoenix WQARF Site.</u> The West Central Phoenix ("<u>WCP</u>") WQARF Site was originally a single, distinct site that was subdivided into five separate WQARF sites in 1998 that are designated as the WCP-East Grand Avenue, WCP-West Grand Avenue, WCP-North Plume, WCP-North Canal Plume, and WCP-WOC, each of which is listed on ADEQ's WQARF Registry of contaminated sites. The WCP area is bounded approximately by Campbell Road to the north, 19th Avenue to the east, McDowell Road to the south and 43rd Avenue to the west. ADEQ has investigated and identified certain of the Defendants as sources of hazardous substances in the WCP WQARF area WQARF sites.

19. The relative locations of the foregoing three regional sites, RID's groundwater supply wells in the WVBA WQARF Site and ADEQ's areal depiction of the most prevalent groundwater contaminant, TCE, a known human carcinogen, are depicted in this map:





8

1

2                        **Investigation and Evaluation of Sites**

3        20. Beginning on October 3, 2008, G&K entered into the G&K-RID engagement

4   letter with RID to serve as RID's agent in securing on behalf of RID the necessary

5   response actions and technical and legal services on a deferred payment basis to enable

6   RID to implement the necessary response actions as required by ADEQ pursuant to that

7   certain Agreement to Conduct Work, dated October 8, 2009, between ADEQ and RID

8   ("Agreement to Conduct Work").

9        21. On February 23, 2009, G&K, on behalf of RID, contacted ADEQ with a public

10  records request to investigate and evaluate information relating to facilities located within

11  the WVBA WQARF Site or listed in ADEQ's Draft RI Report.  As G&K evaluated the

12  scope of contamination, G&K's review of these public records also helped identify

13  potential defendants that were legally liable under CERCLA for the contamination

14  impacting and threatening to impact RID's wells.   Based on the findings in ADEQ's

15  Draft RI Report and other public records, G&K also began reviewing various U.S.

16  Environmental Protection Agency ("EPA") documents and facility reports submitted by

17  Defendants to ADEQ and/or EPA relating to releases and threatened releases of hazardous

18  substances at Defendants' facilities and adjacent areas located within the three foregoing

19  regional sites.

20       22. As part of G&K's continuing obligations under the G&K-RID engagement

21  letter, G&K, as RID's authorized agent, entered into agreements with various consultants

22  to provide services to investigate, evaluate, develop and implement response actions to

23  address the groundwater contamination impacting and threatening RID's water supply

24  wells.  For example, G&K entered into a "Consulting Services Agreement" with Synergy

25  Environmental LLC (Synergy) on or about March 26, 2010, and Synergy has provided

26

1   and continues to provide technical services in the areas of hydrogeology, engineering,

2   general project management and associated tasks as directed by RID

3        23. During G&K's review of the public records, ADEQ's reports also identified

4   additional sources of the soil and groundwater contamination that have impacted or

5   threaten to impact RID's water supply wells.  According to ADEQ's FINAL REMEDIAL

6   INVESTIGATION REPORT – WCP EAST GRAND AVENUE WQARF SITE PHOENIX, ARIZONA

7   (June 2006) ("Final EGA RI Report"),  releases or disposals of non-hazardous substances

8   (*e.g.*, petroleum hydrocarbons) from leaking underground storage tanks at facilities in that

9   area "were reviewed because of the potential for petroleum hydrocarbon contamination to

10  facilitate natural biodegradation of volatile organic compounds ("VOCs")," and several

11  facilities were identified in ADEQ's report "as having the greatest potential impact to

12  water quality."

13       a.     ADEQ's position is supported by EPA, which has found that petroleum

14  hydrocarbons, when introduced into VOC-contaminated groundwater plumes, promote the

15  generation and release of new hazardous substances into the environment.  *See* EPA,

16  TECHNICAL PROTOCOL FOR EVALUATING NATURAL ATTENUATION OF CHLORINATED

17  SOLVENTS IN GROUNDWATER (1998).

18       b.     In fact, EPA and facility records acknowledge that new hazardous

19  substances are generated and released when petroleum hydrocarbons are released into

20  groundwater contaminated with VOCs.

21       24. The various public reports indicate that a wide range of industries operating in

22  all three regional sites used large quantities of chlorinated solvents, including the VOCs

23  TCE and PCE, that pose significant risks to public health, welfare and the environment.

24  Many of these industrial operations began in the 1950s and 1960s when the post-World

25  War II manufacturing economy expanded greatly in Phoenix.

26       a.     For example, EPA's Integrated Risk Information System program released

an updated human health risk assessment of TCE in September 2011.  The assessment noted that TCE was more toxic than previously determined and characterized the chemical as carcinogenic to humans and as a human noncancer health hazard.  EPA's new toxicity values as reported in the assessment will be considered in revising EPA's Maximum Contaminant Level ("MCL") for TCE in drinking water.   In November 2016, the U.S. Department of Health and Human Services announced it was adding TCE to a list of known human carcinogens.  On December 7, 2016, EPA issued a proposed rule to ban uses of TCE as a spot cleaning agent in dry cleaning and as an aerosol spray degreaser in commercial and consumer settings, the first time in 27 years that EPA has proposed to restrict the use of a chemical.

25. Chlorinated solvent use and waste management practices at these industrial facilities are responsible for widespread VOC contamination of soil and groundwater in the region encompassing the WVBA WQARF Site, the WCP WQARF area sites and the M-52 Superfund Site.   Prior to the 1980s, when many environmental laws were adopted, many of these industrial facilities developed on-site waste disposal systems consisting of evaporation ponds, septic systems and leach fields, cesspools, drywells, and other types of wastewater facilities that discharged wastes directly to permeable subsurface sediments for disposal.

26. Releases of solvents in chemical products and wastes containing VOCs as a result of spills, leaks, discharges, and waste disposal practices provide a direct mechanism for vertical contaminant transport through the unsaturated zone to groundwater.  Any hydrologic condition that shortens residence time within the unsaturated zone, increases the amount of VOCs entering groundwater.  According to the WVBA RI Report, the overall coarse-grained nature of the unsaturated zone in the WVBA WQARF Site is not conducive to the retention of VOCs released to the subsurface and will favor more rapid transport through the unsaturated zone and increase the likelihood of VOCs reaching

groundwater.  Similar subsurface conditions are observed throughout the Salt River basin in the region encompassing the commingled contaminant plume in the three regional sites. Furthermore, groundwater levels vary over time and have been significantly higher in past decades when historic releases occurred, resulting in a more direct and rapid pathway for contaminant transport to groundwater.

27. According to the WVBA RI Report, once VOCs are released to the soil, unsaturated flow is "primarily downward until either a change in lithology or the groundwater table is encountered.  As a result of this primarily downward migration, unsaturated flow occurs at or near the source area.  As vadose zone soils within the WVBA are generally permeable, unsaturated flow in the WVBA typically continues to the groundwater table."  In fact, according to the WVBA RI Report, the VOCs "in general will migrate through the vadose zone at a greater rate than water."

28. The physical and chemical properties of chlorinated solvents such as TCE and PCE make these chemicals particularly likely causes of groundwater contamination.  TCE and PCE releases as a non-aqueous phase liquid will move downward through unsaturated soils relatively rapidly, particularly in comparison to infiltrating groundwater, due to the low viscosity and interfacial tension of the VOCs.  These properties allow liquid chlorinated solvents to easily enter into porous media, facilitating deep penetration into the subsurface.  The fact that chlorinated solvents do not readily biodegrade or partition to soil materials means the VOCs are not significantly retarded or removed during transport through the unsaturated zone.

29. As noted in the WVBA RI Report, upon reaching the groundwater table as unsaturated flow, the VOCs dissolve in the uppermost aquifer where groundwater movement within the region is predominantly controlled by RID well pumping.  The commingled plumes of contaminated groundwater underlying the M-52 Superfund Site and the WCP WQARF area sites flow toward and enter the WVBA WQARF Site in

response to the pumping of RID's water supply wells within the WVBA WQARF Site. The contaminated groundwater in all three regional sites is hydrologically connected to the groundwater pumped by RID.  For this reason, the WVBA RI Report acknowledged that "[g]roundwater pumpage represents the major outflow from the groundwater system within the WVBA."

30. The three hydrologically connected regional sites are impacted by multiple, recalcitrant VOCs in a heterogeneous hydrogeologic setting in what is collectively one of the largest groundwater contaminant plumes in the country.  Based on their chemical and physical properties, TCE and PCE releases to groundwater cause severe and persistent contamination because of their complex contaminant distribution and behavior in the subsurface.  Historical releases of these hazardous substances to soil and groundwater in the WVBA WQARF Site, WCP WQARF area sites and M-52 Superfund Site have and will continue to impact RID wells for the foreseeable future.

31. The contaminated groundwater from the WVBA WQARF Site, WCP WQARF area sites and M-52 Superfund Site has impacted and/or threatens to impact more than 30 RID groundwater supply wells.  This contamination violates applicable Arizona numeric (consistent with the federal Maximum Contaminant Levels) and narrative aquifer water quality standards and restricts RID's ability to utilize its developed groundwater resources for their reasonably foreseeable future use as a municipal water supply.

32. Reports issued by ADEQ, EPA and Defendants identify numerous current and former owners and operators of industrial facilities, including the Defendants' facilities, within the WVBA WQARF Site, M-52 Superfund Site and WCP WQARF area sites from which VOCs were released into the commingled plumes of contaminated groundwater that have impacted and threaten to impact RID's groundwater wells.

**Development and Implementation of Response Action**

33. If left untreated, the contaminated groundwater from the M-52 Superfund Site,

WVBA WQARF Site and WCP WQARF area sites is a danger to RID, public health, welfare and the environment, and a valuable drinking water supply.  According to the Agreement to Conduct Work between ADEQ and RID, "ADEQ has determined that releases or threatened releases of hazardous substances have occurred . . . resulting in groundwater contamination that has impacted multiple RID water supply wells which may present an imminent and substantial endangerment to the public health, welfare or the environment within the West Van Buren WQARF Site."

34. To respond to the contamination and threatened contamination of RID's groundwater supply wells from the WVBA WQARF Site, WCP WQARF area sites and the M-52 Superfund Site, RID voluntarily entered into the Agreement to Conduct Work with ADEQ to conduct an Early Response Action ("ERA") and a Feasibility Study Report ("FS Report") at the WVBA WQARF Site.

35. Pursuant to RID's enforceable Agreement to Conduct Work with ADEQ and the G&K-RID engagement letter, G&K, on behalf of RID, and technical consultants investigated, monitored, assessed and evaluated the groundwater contamination and its sources and designed an ERA with the objectives of pumping and treating the groundwater contamination in certain highly contaminated RID groundwater supply wells in accordance with state law and consistent with other Arizona groundwater responses approved by ADEQ or EPA.

36. Under Arizona law, "[ADEQ] or any person may perform an early response action if the action is initiated prior to selection of a remedy at a site under ARIZ. ADMIN. CODE ("A.A.C.") § R18-16-410 and is necessary to:  (1) address current risk to public health, welfare and the environment; (2) protect or provide a supply of water; (3) address sources of contamination; or (4) control or contain contamination where such actions are expected to reduce the scope or cost of the remedy needed at the site."  A.A.C. § R18-16-405(A).

a.    RID submitted the ERA to ADEQ for its review and approval on October 5, 2009, prior to any selection of a remedy under A.A.C. § R18-16-410.  The ERA is authorized under A.A.C. § R18-16-405, as it addresses a current risk to public health, welfare and the environment, protects the water supply in RID's eleven wells that are threatened by the migrating contamination, restores the water supply from ten of RID's most highly contaminated wells, and controls contamination to reduce the scope or cost of ADEQ's selected response action in the FS Report, which will address violations of the applicable aquifer water quality standards and all remaining RID wells in the WVBA WQARF Site that are contaminated and threatened above their reasonably foreseeable drinking water supply end use.

b.    The ERA is "necessary" as a matter of Arizona law not only because over 20 RID wells are currently impacted, but because additional RID wells are "threatened" by VOC contamination as defined in Arizona law.  Arizona law provides that "in considering whether an early response action is necessary to protect or provide a supply of water because a well is threatened by contamination, a well located in the area within 1/4 mile upgradient, 1/2 mile cross-gradient and 1 mile downgradient of the areal extent of contamination at the site shall be presumed to be threatened by the contamination." A.A.C. § R18-16-405(I).

37. The ERA required that RID would initially and continuously pump contaminated groundwater from its ten groundwater supply wells adjacent to the Salt Canal into the Salt Canal; ultimately, RID would connect and continuously pump the ten most highly contaminated RID wells into the Salt Canal; improve infrastructure to facilitate water treatment and prevent contaminant transfer and release; and build a 20,000 gallon-per-minute treatment plant to treat contaminated groundwater pumped into the Salt Canal.

38. ADEQ and its technical consultants provided technical comments on the ERA

to RID on December 23, 2009.

39. To address ADEQ's technical comments, RID submitted a revised ERA to ADEQ on February 4, 2010.

40. Several Defendants identified in this complaint and other interested parties provided comments to ADEQ on both the initial and revised ERA and objected to ADEQ's approval of the ERA.  G&K, on behalf of RID, provided written responses to all of the public comments.

41. Pursuant to the Agreement to Conduct Work with ADEQ and A.A.C. § R18-16-405, the Director of ADEQ is required to approve the ERA if it meets all of the criteria of A.R.S. § 49-282.06(A), which provide that the ERA must protect public health, welfare and the environment, allow maximum beneficial use of state waters, and be reasonable, necessary, cost effective, and technically feasible.

42. The ERA met these criteria, and the Director of ADEQ approved the ERA on June 24, 2010.

43. Pursuant to the Agreement to Conduct Work with ADEQ, RID is required to conduct the response actions approved by ADEQ.  Upon ADEQ's approval of RID's ERA, G&K, on behalf of RID, has incurred, and continues to incur, response costs consistent with the National Contingency Plan ("NCP") to implement the ADEQ-approved ERA and address the contaminated groundwater that violates applicable aquifer water quality standards and has impacted and threatens to impact RID's groundwater supply wells.

44. Pursuant to the ADEQ-approved ERA, G&K, on behalf of RID, pursued an initiative to (a) evaluate the effectiveness of liquid-phase granular activated carbon treatment technology in removing the mixture of hazardous VOCs present in the WVBA WQARF Site, (b) evaluate two types of liquid-phase granular activated carbon treatment for effectiveness and efficiency, (c) evaluate the feasibility and constraints of wellhead

treatment in lieu of more expensive centralized treatment, and (d) refine the capital and operation and maintenance cost estimates with the ultimate intention of reducing ERA response costs.  This "RID-95 Wellhead Pilot Treatment System Proposal" was agreed to by ADEQ on September 2, 2011 and authorized the installation and operation of wellhead pump and treatment at four of the RID groundwater supply wells with the highest levels of contamination in concentrations that exceed the applicable aquifer water quality standards.

45.  As a result of technical discussions with ADEQ, information developed during the implementation of the ADEQ-approved ERA, and data obtained from the pump and treatment of the four RID groundwater supply wells, RID submitted a proposal to ADEQ to modify the ADEQ-approved ERA.  Similar to the original ERA, the Modified ERA meets all applicable requirements established by law and necessary to protect RID's water supply and address current and future risks to public health, welfare and the environment. The Modified ERA reduces the capital and operation and maintenance costs of the original ERA for the WVBA WQARF Site by as much as fifty percent.

46. ADEQ analyzed the proposed modifications to the original ERA to assure it meets the objectives of an ERA and to determine compliance with applicable Arizona statutes and rules.  G&K, on behalf of RID, responded to public comments on the Modified ERA.  ADEQ approved the Modified ERA on February 1, 2013.

47. Upon ADEQ's approval of RID's Modified ERA, G&K, on behalf of RID, has incurred and continues to incur response costs consistent with the NCP to implement the ADEQ-approved Modified ERA and address the contaminated groundwater that violates applicable aquifer water quality standards and has impacted and threatens to impact RID's groundwater supply wells above their reasonably foreseeable drinking water supply end use.

48.  Pursuant to the Agreement to Conduct Work with ADEQ and the ADEQ-approved ERA and Modified ERA, G&K, on behalf of RID, also took response actions to develop and implement a FS Report for the WVBA WQARF Site to address groundwater contamination that violates applicable aquifer water quality standards and all RID wells impacted or threatened to be impacted above their reasonably foreseeable drinking water supply end use by groundwater contamination in the WVBA WQARF Site as required under state law.  ADEQ analyzed the FS Work Plan and FS Report submitted to ADEQ to assure both complied with applicable Arizona statutes and rules.  G&K, on behalf of RID, responded to public comments on the FS Work Plan and FS Report.  ADEQ approved the FS Work Plan on July 16, 2013 and the FS Report on April 13, 2015.

49. Upon ADEQ's approval of RID's FS Work Plan and FS Report, G&K, on behalf of RID, has incurred, and continues to incur, costs consistent with the NCP to implement the ADEQ-approved FS Work Plan and FS Report and address the contaminated groundwater that violates applicable aquifer water quality standards and has impacted and threatens to impact RID's groundwater supply wells above their reasonably foreseeable drinking water supply end use.

50. Pursuant to the ADEQ-approved ERA, ADEQ certified the Operation and Maintenance Plan ("O&M") to implement the ADEQ-approved Modified ERA on April 10, 2015.  The O&M Plan has been revised and approved by ADEQ to include the selected response action in the ADEQ-approved FS Report.

51. To date, the ADEQ-approved response actions have resulted in 6.633 billion gallons of contaminated groundwater being treated with fail-safe technology at four wellhead treatments systems and the removal of over 2,800 pounds of hazardous volatile organic compounds.



52. G&K, on behalf of RID, has incurred at least $15,000,000 in necessary response costs relating to the investigation, development and implementation of the required response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan under the oversight of ADEQ.  These costs include, but are not limited to, the costs of: (1) investigating, monitoring, assessing and evaluating the hazardous substances, the releases and threatened releases of those hazardous substances, and the identification of the facilities and parties responsible for those releases and threatened releases; (2) investigations and studies to evaluate the scope of the contamination and response options; (3) preparation of the proposed ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan; (4) the administrative process and approval of the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan; (5) the selection and procurement of necessary consultants and contractors; and (6) the

evaluation, design, construction, and operation of treatment systems to implement the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan.  For purposes of this initial action, G&K is seeking recovery of $6,741,144.18 of those incurred costs as set forth in Exhibit B.

**Compliance with State WQARF Program and Federal National Contingency Plan**

53.   G&K, on behalf of RID, pursued response actions that fully complied with all applicable WQARF requirements and rules and ensured that the response actions were consistent with other groundwater cleanups in Arizona by complying with the potentially applicable provisions of the federal National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. pt. 300 (the "NCP").

54.   G&K's response actions, on behalf of RID, were deemed compliant with the WQARF requirements and rules pursuant to ADEQ's approvals under Ariz. Admin. Code R18-16-413.  The WQARF program and ADEQ approval process were modeled after CERCLA, and ADEQ's approval alone demonstrates substantial compliance with the NCP.  Additionally, G&K's response actions, when evaluated as a whole with the work performed at the WVBA WQARF Site, demonstrate substantial compliance with the potentially applicable NCP provisions for a private party response.   G&K's response actions comply with the potentially applicable NCP provisions on worker health and safety, on documentation and cost recovery, on permit requirements, on identification of ARARs, on removal site evaluation, on removal actions, on remedial site evaluation, on RI/FS and selection of remedy, on remedial design/remedial action and operation and maintenance, on public participation, and on the types of response actions in response to contaminated groundwater to achieve a CERCLA-quality cleanup.

55.   Some of the Defendants have admitted in writing to ADEQ that G&K's response actions, on behalf of RID, are in compliance with CERCLA's NCP requirements.  These Defendants stated that "the [G&K] submittal [to ADEQ] includes three tables that purport to identify the applicable legal requirements that apply to an FS for the [WVBA] WQARF Site…the [G&K] submittal helped the Working Group to understand why the RID FS and its proposed remedy are so inconsistent with the provisions of WQARF. [G&K's] submittal states that RID conducted its FS in compliance with CERCLA requirements, not WQARF requirements, and designed its proposed remedy in accordance with CERCLA, not WQARF."[3]

## SECTION 107 Liability Under CERCLA

56. To prevail on a CERCLA Section 107 cost-recovery claim, a plaintiff need only show the following four elements to designate each Defendant a PRP who is jointly and severally liable under CERCLA for all necessary response costs incurred in substantial compliance with the applicable provisions of the NCP:

(1)    that Defendant is a current or former owner and/or operator of a facility;

(2)    that Defendant's site is a "facility" as defined in CERCLA;

(3)    that there has been a release or a threatened release of hazardous substances at or from Defendant's facility; and,

(4)    that G&K has incurred necessary costs in responding to the release or threatened release that are consistent with the NCP.

57. Under CERCLA, a "release" is defined as "any spilling, leaking, pouring, emitting, emptying, discharging, injecting, dumping, or disposing into the environment." The term "release" is construed broadly to include the mere presence of hazardous

---

[3] Attached as Exhibit A are the three referenced tables that, through a comparative analysis of CERCLA and WQARF response action requirements, demonstrate substantial compliance with the potentially applicable NCP provisions for a private party response action.

substances in soil or groundwater.  The presence of hazardous substances in soil and groundwater and the past, present or potential migration of hazardous substances constitute actual and/or threatened "releases" pursuant to CERCLA.

58. Under CERCLA, substantial compliance with the NCP has been construed broadly to include a response action that "results in a CERCLA-quality cleanup" or that is consistent with a government-approved work plan or conducted under government oversight.

59. Each of the Defendants is a PRP because: (1) each Defendant is a current or former owner/operator of a facility; (2) each Defendants' site is a "caility" as defined in CERCLA; (3) hazardous substances have been released at each of the Defendant's facilities; and (4) as alleged above, G&K, on behalf of RID, has incurred necessary costs to investigate, monitor, assess, evaluate and implement response actions to respond to the releases under oversight from ADEQ in substantial compliance with the NCP.

## ALLEGATIONS AS TO SPECIFIC DEFENDANTS

60. **City of Phoenix**

a.      According to EPA and facility records, the City of Phoenix owns and/or operates facilities located at 111 South 34th Street and 2801 East Air Lane in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated those facilities at the time hazardous substances were disposed of at the facilities.

(i)      According to the EPA and facility records, TCE and TCA were used; TCE, PCE, 1,1,1-TCA, cis-1,2-DCE, 1,1-DCE and petroleum hydrocarbons are present in the soil; and TCE, PCE, 1,1,1-TCA, cis-1,2-DCE, 1,1-DCE, 1,1-DCA and petroleum hydrocarbons are present in the groundwater at the 111 South 34th Street facility, which is located in an area with known VOC-contaminated groundwater.

(ii)    According to EPA and facility records, TCE and PCE are present in the soil and TCE, TCA, 1,1-DCA and 1,1-DCE are present in the groundwater at the 2801 East Air Lane facility.

b.    According to the City of Phoenix response to Draft Phase I Eastlake Park Area WQARF Site Report, dated November 17, 1988, the City of Phoenix owns and/or operates many of the facilities located at Sky Harbor International Airport in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated those facilities at the time hazardous substances were disposed of at the facilities.

(i)    According to the City of Phoenix response to Draft Phase I Eastlake Park Area WQARF Site Report, dated November 17, 1988, the City of Phoenix acknowledges that some of its tenants at Sky Harbor International Airport are identified sources of the VOC contamination in the Phase I Report.

(ii)    According to an internal ADEQ memorandum, dated August 18, 1994, the groundwater contamination at Sky Harbor International Airport has merged with the groundwater contamination present in the East Washington WQARF Site (which is now designated as OU2 and OU3 of the adjacent M-52 Superfund Site).

c.    According to an Underground Storage Tank incident report, dated May 10, 1994, the City of Phoenix owns and/or operates the Southeast Sky Harbor Service Center facility located at 2525 East Hess Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)    According to an Underground Storage Tank case evaluation ranking form, dated August 19, 1994, the City of Phoenix acknowledged that released petroleum hydrocarbons had impacted the groundwater within a WQARF site with known VOC contamination.

23

d.      The VOCs released or the new hazardous substances generated and released at the City of Phoenix facilities are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

e.      Thus, based on public records, the City of Phoenix is the (1) current or former owner or operator of (2) facilities where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

61.   **Maricopa County**

a.      According to ADEQ's WVBA RI Report; Roy F. Weston, Inc., Draft Technical Memorandum for the Preliminary Site Investigation at Maricopa County Materials Management (1993) ("Maricopa Memo"); Groundwater Technology, Inc., Phase I Environmental Assessment for Maricopa County Materials Management Facility (1995) ("Maricopa Phase I Report"); and Southern Pacific Transportation Company and Maricopa County, *Assignment of Interest* (Oct. 15, 1974),  Maricopa County owns and/or operates a facility located at 320 West Lincoln Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)      According to ADEQ's WVBA RI Report, TCE, PCE, 1,1-DCE and 1,2-DCA are present in the soil and TCE, PCE, TCA, 1,1-DCE, 1,2-DCA and cis-1,2-DCE are present in the groundwater at the 320 West Lincoln Street facility.

b.      The VOCs released at the Maricopa County facilities are the same VOCs

that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.      Thus, based on public records, Maricopa County is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

62.     **The United States Department of Defense**

a.      According to the Narrative Site Information for the Motorola 52nd Street Superfund Site available on ADEQ's website, United States Department of Defense owns and/or operates a facility located at 111 South 34th Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)      According to the EPA and facility records, TCE and TCA were used; TCE, PCE, 1,1,1-TCA, cis-1,2-DCE, 1,1-DCE and petroleum hydrocarbons are present in the soil; and TCE, PCE, 1,1,1-TCA, cis-1,2-DCE, 1,1-DCE, 1,1-DCA and petroleum hydrocarbons are present in the groundwater at the 111 South 34th Street facility, which is located in an area with known VOC-contaminated groundwater.

b.      The VOCs released or the new hazardous substances generated and released at the United States Department of Defense facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95

Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.  Thus, based on public records, the United States Department of Defense is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

63.  **Alcatel-Lucent USA Inc.**

a.  Upon information and belief, Alcatel-Lucent USA Inc. is the successor-in-interest to American Telephone and Telegraph Company.

b.  According to ADEQ's WVBA RI Report, Alcatel-Lucent USA Inc. owns and/or operates a facility located at 505 North 51st Avenue in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)  According to ADEQ's WVBA RI Report, TCA was used and TCE, PCE and 1,1-DCA are present in the soil at the 505 North 51st Avenue facility.

c.  The VOCs released at the Alcatel-Lucent USA Inc. facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

d.  Thus, based on public records, Alcatel-Lucent USA Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened

release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

64. **ArvinMeritor, Inc.**

a. According to the 2006 Final-Focused Remedial Investigation Work Plan and Sampling Analysis Plan - 500 S. 15th Street Facility Phoenix, Arizona (July 19, 2006) ("Final FRI for the 500 S. 15th Street Facility"), ArvinMeritor, Inc. owns and/or operates a facility located at 500 South 15th Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i) According to the Final FRI for the 500 S. 15th Street Facility, PCE and petroleum hydrocarbons were stored and used; TCE, PCE, TCA, 1,1-DCA, 1,1-DCE and 1,2-DCA are present in the soil and soil gas; and TCE, PCE, TCA, 1,1-DCA, 1,1-DCE and 1,2-DCE are present in the groundwater at the 500 South 15th Street facility.

(ii) According to ADEQ's WVBA RI Report, ArvinMeritor, Inc. has been identified as a PRP and its facility located at 500 South 15th Street as a potential source of the hazardous substances that have been released and have migrated into the WVBA WQARF Site.

b. The VOCs released at the ArvinMeritor, Inc. facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c. Thus, based on public records, ArvinMeritor, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened

27

release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

65.     **Brake Supply Company, Inc.**

a.     According to ADEQ's WVBA RI Report, Brake Supply Company, Inc. owns and/or operates a facility located at 420 South 7th Avenue in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)     According to ADEQ's WVBA RI Report, TCE and PCE are present in soil and soil gas at the 420 South 7th Avenue facility.

b.     The VOCs released at the Brake Supply Company, Inc. facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.     Thus, based on public records, Brake Supply Company, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

66.     **Chevron U.S.A. Inc.**

a.     Upon information and belief, Chevron is the successor-in-interest to The Texas Company, also known as Texaco.

b.     According to ADEQ's WVBA RI Report, Chevron U.S.A. Inc. owns and/or operates a facility located at 3050 South 19th Avenue in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned

28

and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i) According to ADEQ's WVBA RI Report, TCE and TCA are present in the soil at the 3050 South 19th Avenue facility.

c. The VOCs released or the new hazardous substances generated and released at the Chevron U.S.A. Inc. facilities are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

d. Thus, based on public records, Chevron U.S.A. Inc. is the (1) current or former owner or operator of (2) facilities where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

67. **Cooper Industries LLC**

a. According to the Final FRI for the 500 S. 15th Street Facility, Cooper Industries LLC owns and/or operates a facility located at 500 South 15th Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i) According to the Final FRI for the 500 S. 15th Street Facility, PCE and petroleum hydrocarbons were stored and used; TCE, PCE, TCA, 1,1-DCA, 1,1-DCE and 1,2-DCA are present in the soil and soil gas; and TCE, PCE, TCA, 1,1-DCA, 1,1-DCE and 1,2-DCE are present in the groundwater at the 500 S. 15th Street facility.

29

(ii)     According to ADEQ's WVBA RI Report, Cooper Industries LLC has been identified as a PRP and its facility at 500 S. 15th Street as a potential source of the hazardous substances that have been released and have migrated into the WVBA WQARF Site.

b.     The VOCs released at the Cooper Industries LLC facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.     Thus, based on public records, Cooper Industries LLC is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

68.     **D-Velco Manufacturing of Arizona, Inc.**

a.     According to the Narrative Site Information for the Motorola 52nd Street Superfund Site available on ADEQ's website, D-Velco Manufacturing of Arizona, Inc. owns and/or operates a facility located at 401 South 36th Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)     According to the Narrative Site Information for the Motorola 52nd Street Superfund Site available on ADEQ's website, a General Notice Letter on September 3, 2003 and a Special Notice Letter on July 2, 2004 from EPA identified the facility located at 401 South 36th Street as a potential source of the hazardous substances that have been released and have migrated into the WVBA WQARF

1    Site.

2        b.       Upon information and belief, the hazardous substances released at the D-

3    Velco Manufacturing of Arizona, Inc. facility are the same hazardous substances that have

4    caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to

5    investigate, develop and implement the response actions approved by ADEQ in the ERA,

6    RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and

7    address the VOC-contaminated groundwater that has impacted or threatens to impact

8    RID's wells and violates applicable aquifer water quality standards.

9        c.       Thus, based on public records, D-Velco Manufacturing of Arizona, Inc. is

10   the (1) current or former owner or operator of (2) a facility where there has been (3) a

11   release or threatened release of a hazardous substance for which (4) G&K, on behalf of

12   RID, has incurred response costs to address the hazardous substances consistent with the

13   NCP.

14       69.  **Holsum Bakery, Inc.**

15       a.       According to ADEQ's WVBA RI Report,  Holsum Bakery, Inc. owns

16   and/or operates a facility located at 408 South 23rd Avenue in Phoenix, Arizona from

17   which there has been a release or threatened release of hazardous substances, or formerly

18   owned and/or operated that facility at the time hazardous substances were disposed of at

19   the facility.

20       (i)       According to ADEQ's WVBA RI Report, PCE is present in the soil and

21           PCE, TCE, TCA, 1,1-DCE, cis-1,2-DCE and 1,1-DCA are present in the

22           groundwater at the 408 South 23rd Avenue facility.

23       b.       The VOCs released at the Holsum Bakery, Inc. facility are the same VOCs

24   that have caused G&K, on behalf of RID, to incur response costs, consistent with the

25   NCP, to investigate, develop and implement the response actions approved by ADEQ in

26   the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M

Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.      Thus, based on public records, Holsum Bakery, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

70.     **Kinder Morgan Energy Partners, L.P.**

a.      Upon information and belief, Kinder Morgan Energy Partners, L.P., and entities related to Kinder Morgan, owns and/or operates the Phoenix Tank Farm or Phoenix Terminal facilities located at or around 49 North 53rd Avenue in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated those facilities at the time hazardous substances were disposed of at the facilities.

b.      According to LFR Levine-Fricke, Phoenix Terminal Group Source Areas and Remedial Actions Report (2000) ("Terminal Source Report") (prepared for The Phoenix Terminal Group c/o Kinder Morgan Energy Partners); Further Subsurface Assessment & Closure Report, UNOCAL Lease Property (1994) ("Terminal UNOCAL Report") and the Terminal RI/FS Report, Kinder Morgan Energy Partners, L.P. owns and/or operates the Phoenix Tank Farm or Phoenix Terminal facilities located at or around 49 North 53rd Avenue in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated those facilities at the time hazardous substances were disposed of at the facilities.

(i)     According to the Terminal UNOCAL Report, ADEQ Phase 1 Report and Terminal RI/FS Report, TCE, PCE and TCA are present in the soil and TCE, PCE, 1,1-DCE, cis-1,2-DCE and 1,2-DCA are present in the groundwater at the Phoenix Tank Farm facilities.

(ii)     According to the PTG Summary Source Report, VOCs are present in the soil and petroleum hydrocarbons are present in the soil and groundwater at the Phoenix Tank Farm facilities, which are located in an area with known VOC-contaminated groundwater.

(iii)     According to the Terminal RI/FS Report, TCE, PCE, TCA, 1,1-DCE, 1,2-DCE, 1,1-DCA and 1,2-DCA are present in groundwater at the Phoenix Tank Farm facilities.

c.     The VOCs released or the new hazardous substances generated and released at the Kinder Morgan Energy Partners, L.P. facilities are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards and violates applicable aquifer water quality standards.

d.     Thus, based on public records, Kinder Morgan Energy Partners, L.P. is the (1) current or former owner or operator of (2) facilities where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

71.     **Laundry & Cleaners Supply, Inc.**

a.     According to the Narrative Site Information for the Motorola 52nd Street Superfund Site available on ADEQ's website, Laundry & Cleaners Supply, Inc. owns and/or operates a facility located at 4120 East Madison Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

33

(i)     According to the Narrative Site Information for the Motorola 52nd Street Superfund Site available on ADEQ's website, Laundry & Cleaners Supply, Inc. received a  General Notice Letter, dated September 3, 2003, from EPA identifying Laundry & Cleaners Supply, Inc. as a PRP and its facility located at 4120 East Madison Street as a potential source of the hazardous substances that have been released and have migrated into the WVBA WQARF Site.

b.     Upon information and belief, the hazardous substances released at the Laundry & Cleaners Supply, Inc. facility are the same hazardous substances that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.     Thus, based on public records, Laundry & Cleaners Supply, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

72.    **Milum Textile Services Co.**

a.     According to ADEQ's WVBA RI Report, Milum Textile Services Co. owns and/or operates a facility located at 333 North 7th Avenue in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)     According to ADEQ's WVBA RI Report, PCE was used at the facility; PCE, TCA and TCE are present in the soil gas; and PCE, TCE and 1,1-DCE are present in the groundwater downgradient of the 333 North 7th Avenue facility.

(ii)    According to ADEQ's WVBA RI Report, Milum Textile Services Co. has been identified as a PRP and its facility located at 333 North 7th Avenue as a potential source of the hazardous substances that have been released and have migrated into the WVBA WQARF Site.

b.      The VOCs released at the Milum Textile Services Co. facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.      Thus, based on public records, Milum Textile Services Co. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

73.     **North American Terminals Management, Inc.**

a.      Upon information and belief, North American Terminals Management, Inc. owns and/or operates a facility located at 2021 South 51st Avenue in Phoenix, Arizona from which there has been a release or threatened release of a hazardous substance, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)     According to ADEQ's WVBA RI Report, TCE is present in the soil at the 2021 South 51st Avenue facility.

b.      The VOC released at the North American Terminals Management, Inc. facility is the same VOC that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified

ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards

c.      Thus, based on public records, North American Terminals Management, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

74.   **NUCOR Corporation**

a.      According to the WOC RI Report, NUCOR Corporation owns and/or operates a facility located at 3536 West Osborn Road in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)      According to the WOC RI Report, TCE was used; PCE, TCE and 1,1-DCE are present in the soil; and PCE, TCE and 1,1-DCE are present in the groundwater at the 3536 West Osborn Road facility.

b.      The VOCs released at the NUCOR Corporation facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.      Thus, based on public records, NUCOR Corporation is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred

response costs to address the hazardous substances consistent with the NCP.

75.   **Phoenix Heat Treating, Inc.**

a.      According to ADEQ's WVBA RI Report, Phoenix Heat Treating, Inc. owns and/or operates a facility located at 2405 West Mohave Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)      According to ADEQ's WVBA RI Report, TCA was used at the facility and TCA, TCE and 1,1-DCE are present in the soil and soil gas at the 2405 West Mohave Street facility.

b.      The VOCs released at the Phoenix Heat Treating, Inc. facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.      Thus, based on public records, Phoenix Heat Treating, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

76.   **Phoenix Industrial Properties, Inc.**

a.      According to the Narrative Site Information for the Motorola 52nd Street Superfund Site available on ADEQ's website, Phoenix Industrial Properties, Inc. owns and/or operates a facility located at 3027 East Washington in Phoenix, Arizona from which there has been a release or threatened release of a hazardous substance, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at

the facility.

(i)     According to the Narrative Site Information for the Motorola 52nd Street Superfund Site available on ADEQ's website, Phoenix Industrial Properties, Inc. received a General Notice Letter, dated September 3, 2003, and Special Notice Letter, dated July 2, 2004, from EPA identifying Phoenix Industrial Properties, Inc. as a PRP and its facility located at 3027 East Washington as a potential source of the hazardous substances that have been released and have migrated into the WVBA WQARF Site.

b.     Upon information and belief, the hazardous substances released at the Phoenix Industrial Properties, Inc. facility are the same hazardous substances that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.     Thus, based on public records, Phoenix Industrial Properties, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

77.   **Phoenix Newspapers, Inc.**

a.     According to Phoenix Newspapers, Inc.'s Report on Focused Remedial Investigation Report – Former Phoenix Newspapers, Inc Site 120 East Van Buren Street Phoenix, Arizona (July 2009) ("Phoenix Newspapers, Inc.'s Focused RI Report"), Phoenix Newspapers, Inc. owns and/or operates a facility located at 120 East Van Buren Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time

hazardous substances were disposed of at the facility.

(i)      According to Phoenix Newspapers, Inc.'s Focused RI Report, TCE, TCA and PCE are present in the soil at the 120 East Van Buren Street facility.

(ii)     According to ADEQ's WVBA RI Report, Phoenix Newspapers, Inc. has been identified as a PRP and its facility located at 120 East Van Buren Street as a potential source of the hazardous substances that have been released and have migrated into the WVBA WQARF Site.

b.      The VOCs released at the Phoenix Newspapers, Inc. facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.      Thus, based on public records, Phoenix Newspapers, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

78.      **Praxair, Inc.**

a.      Upon information and belief, Praxair is the successor-in-interest to Treffers Precision, Inc.

b.      According to ADEQ's WVBA RI Report, Praxair, Inc. owns and/or operates a facility located at 1021 North 22nd Avenue in Phoenix, Arizona from which there has been a release or threatened release of a hazardous substance, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)      According to ADEQ's WVBA RI Report, PCE and TCA were used and PCE is present in the soil at the 1021 North 22nd Avenue facility.

c.      The VOC released at the Praxair, Inc. facility is the same VOC that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

d.      Thus, based on public records, Praxair, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

79.   **Prudential Overall Supply**

a.      According to ADEQ's WVBA RI Report; AMEC Geomatrix, Inc., GORE Survey Report, Prudential Overall Supply (2008) ("POS Soil Report"); ADEQ Phase 1 Report and ADEQ's correspondence regarding groundwater at Prudential Overall Supply's facility at 5201 West Roosevelt Street (July 20, 2010) ("POS Letter"), Prudential Overall Supply owns and/or operates a facility located at 5102 West Roosevelt Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)      According to ADEQ's WVBA RI Report, PCE was used; PCE is present in the soil; and PCE and TCE are present in soil gas samples at the 5102 West Roosevelt Street facility.

b.      The VOCs released at the Prudential Overall Supply facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and

O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.     Thus, based on public records, Prudential Overall Supply is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

80.     **Research Chemicals Incorporated**

a.     According to ADEQ's WVBA RI Report, Research Chemicals Incorporated owns and/or operates a facility located at 8220 West Harrison Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)     According to ADEQ's WVBA RI Report, TCE, TCA, PCE and 1,1-DCE are present in the soil and groundwater at the 8220 West Harrison Street facility.

b.     The VOCs released at the Research Chemicals facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.     Thus, based on public records, Research Chemicals Incorporated is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

81.     **Rexam Beverage Can Company**

a.     Upon information and belief, Rexam Beverage Can Company is the

successor-in-interest to American National Can Group.

b.  According to ADEQ's WVBA RI Report, Rexam Beverage Can Company owns and/or operates a facility located at 211 North 51st Avenue in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)  According to ADEQ's WVBA RI Report, TCE, TCA, PCE and 1,1-DCE are present in the soil and soil gas at the 211 North 51st Avenue facility.

c.  The VOCs released at the Rexam Beverage Can Company facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

d.  Thus, based on public records, Rexam Beverage Can Company is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

82.  **Romic Environmental Technologies**

a.  According to the WVBA RI Report, Romic Environmental Technologies is a successor-in-interest to Southwest Solvents that formerly operated a facility located at 320 West Lincoln Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)  According to ADEQ's WVBA RI Report, TCE, PCE, 1,1-DCE and 1,2-DCA are present in the soil and TCE, PCE, TCA, 1,1-DCE, 1,2-DCA and cis-

1,2-DCE are present in the groundwater at the 320 West Lincoln Street facility.

b.      The VOCs released at the former Southwest Solvent facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.      Thus, based on public records, Romic Environmental Technologies is a (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

83.    **Schuff Steel Company**

a.      According to ADEQ's WVBA RI Report, Schuff Steel Company owns and/or operates a facility located at 420 South 19th Avenue in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)      According to ADEQ's WVBA RI Report, TCE, PCE, TCA, 1,1-DCE and 1,1-DCA are present in the soil and TCE and 1,1-DCE are present in wastewater at the 420 South 19th Avenue facility.

b.      The VOCs released at the Schuff Steel Company facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

43

c.      Thus, based on public records, Schuff Steel Company is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

84.     **Shell Oil Company**

a.      According to the PTG Summary Source Report, Shell Oil Company owns and/or operates a facility located at 49 North 53rd Avenue (also known as the Phoenix Tank Farm or Phoenix Terminal) in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)     According to the PTG Summary Source Report, petroleum hydrocarbons have been released and are present in soil at the 49 North 53rd Avenue facility, which is located in an area with known VOC-contaminated groundwater.

(ii)    According to the Terminal RI/FS Report, TCE, PCE, 1,1-DCE, 1,2-DCE and 1,2-DCE are present in the groundwater at the 49 North 53rd Avenue facility.

(iii)   According to the Tank Farm Summary Site Assessment, releases of petroleum hydrocarbons have significantly impacted groundwater at the 49 North 53rd Avenue facility, which is located in an area with known VOC-contaminated groundwater.

b.      The VOCs released or the new hazardous substances generated and released at the Shell Oil Company facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

44

c.      Thus, based on public records, Shell Oil Company is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

85.    **Times Fiber Communications, Inc.**

a.      According to ADEQ's WVBA RI Report, Times Fiber Communications, Inc. owns and/or operates a facility located at 4648 West Van Buren Street in Phoenix, Arizona from which there has been a release or threatened release of a hazardous substance, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)     According to ADEQ's WVBA RI Report, TCA was used and is present in the groundwater at the 4648 West Van Buren Street facility.

b.      The VOC released at the Times Fiber Communications, Inc. facility is the same VOC that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

c.      Thus, based on public records, Times Fiber Communications, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

86.    **Union Oil**

a.      According to the WVBA RI Report, Union Oil owns and/or operates the former Union Oil Company of California ("Unocal") facility located at 10 South 51st Avenue in Phoenix, Arizona from which there has been a release or threatened release of

45

hazardous substances, or formerly owned and/or operated that facility at the time

hazardous substances were disposed of at the facility.  Union Oil became the successor-in-

interest to Unocal following their 2005 acquisition of Unocal Corporation.

(i)      According to the WVBA RI Report, TCE and PCE were detected in the soil

at the Unocal facility and TCE, PCE, TCA, 1,1-DCE, 1,1-DCA and cis-1,2-DCE

were detected in the evaporation pond and process water at the Unocal facility.

b.      The VOCs released at the Unocal facility are the same VOCs that have

caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to

investigate, develop and implement the response actions approved by ADEQ in the ERA,

RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and

address the VOC-contaminated groundwater that has impacted or threatens to impact

RID's wells and violates applicable aquifer water quality standards.

c.      Thus, based on public records, Union Oil is the (1) current or former owner

or operator of (2) a facility where there has been (3) a release or threatened release of a

hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to

address the hazardous substances consistent with the NCP.

87.   **Walker Power Systems, Inc.**

d.      According to the Research Report – Walker Power Systems Site 1301 East

Jackson Phoenix Arizona 85034 (July 13, 2005) ("1301 East Jackson Research Report"),

Walker Power Systems, Inc. owns and/or operates a facility located at 1301 East Jackson

Street in Phoenix, Arizona from which there has been a release or threatened release of

hazardous substances, or formerly owned and/or operated that facility at the time

hazardous substances were disposed of at the facility.

(ii)      According to the 1301 East Jackson Research Report, TCE and TCA were

used and TCE and PCE are present in the soil at the 1301 East Jackson Street

facility.

(iii)     According to the Subsurface Investigation – Tiernay Tubrines, Inc. Phoenix, Arizona (August 10, 1994), TCE, PCE and 1,2-DCE are present in the soil and TCE, PCE, TCA, 1,1-DCE, 1,1-DCA and 1,2-DCE are present in the groundwater at the 1301 East Jackson Street facility.

(iv)     According to ADEQ's WVBA RI Report, Walker Power Systems, Inc. has been identified as a PRP and its facility located at 1301 East Jackson Street as a potential source of the hazardous substances that have been released and have migrated into the WVBA WQARF Site.

e.     The VOCs released at the Walker Power Systems, Inc. facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

f.     Thus, based on public records, Walker Power Systems, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

88.     **West Monroe Property, Inc.**

a.     Upon information and belief, West Monroe Property, Inc. is the successor-in-interest to Maximet Corporation.

b.     According to ADEQ's WVBA RI Report, West Monroe Property, Inc. owns and/or operates a facility located at 5925 West Monroe Street in Phoenix, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)      According to ADEQ's WVBA RI Report, TCA was used and TCE and TCA are present in the soil at the 5925 West Monroe Street facility.

c.      The VOCs released at the West Monroe Property, Inc. facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or threatens to impact RID's wells and violates applicable aquifer water quality standards.

d.      Thus, based on public records, West Monroe Property, Inc. is the (1) current or former owner or operator of (2) a facility where there has been (3) a release or threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to address the hazardous substances consistent with the NCP.

89.   **World Resources Company**

a.      According to ADEQ's WVBA RI Report, World Resources Company owns and/or operates a facility located at 8113 West Sherman Street in Tolleson, Arizona from which there has been a release or threatened release of hazardous substances, or formerly owned and/or operated that facility at the time hazardous substances were disposed of at the facility.

(i)      According to ADEQ's WVBA RI Report, PCE was used, TCE and TCA are present in the soil, and TCA is present in the groundwater at the 8113 West Sherman Street facility.

b.      The VOCs released at the World Resources Company facility are the same VOCs that have caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to investigate, develop and implement the response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and address the VOC-contaminated groundwater that has impacted or

48

1   threatens to impact RID's wells and violates applicable aquifer water quality standards.

2   c.      Thus, based on public records, World Resources Company is the (1) current

3   or former owner or operator of (2) a facility where there has been (3) a release or

4   threatened release of a hazardous substance for which (4) G&K, on behalf of RID, has

5   incurred response costs to address the hazardous substances consistent with the NCP.

6   90.   **YRC Inc.**

7   a.      Upon information and belief, YRC is the successor-in-interest to Roadway

8   Express.

9   b.      According to ADEQ's WVBA RI Report, YRC Inc. owns and/or operates a

10  facility located at 2021 South 51st Avenue in Phoenix, Arizona from which there has been

11  a release or threatened release of a hazardous substance, or formerly owned and/or

12  operated that facility at the time hazardous substances were disposed of at the facility.

13  (i)      According to ADEQ's WVBA RI Report, TCE is present in the soil at the

14  2021 South 51st Avenue facility.

15  c.      The VOC released at the YRC Inc. facility is the same VOC that have

16  caused G&K, on behalf of RID, to incur response costs, consistent with the NCP, to

17  investigate, develop and implement the response actions approved by ADEQ in the ERA,

18  RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan and

19  address the VOC-contaminated groundwater that has impacted or threatens to impact

20  RID's wells and violates applicable aquifer water quality standards.

21  d.      Thus, based on public records, YRC Inc. is the (1) current or former owner

22  or operator of (2) facilities where there has been (3) a release or threatened release of a

23  hazardous substance for which (4) G&K, on behalf of RID, has incurred response costs to

24  address the hazardous substances consistent with the NCP.

25

26

**COUNT ONE**

**(CERCLA)**

91. G&K incorporates the allegations contained in paragraphs 1 through 90 herein by reference.

92. Each Defendant identified in Paragraphs 58 through 90 of this Complaint owns and/or operates or formerly owned and/or operated a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

93. There has been a release or threatened release, as defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of one or more hazardous substances from the facility or facilities owned and/or operated or formerly owned and/or operated at the time of the release or threatened release by each Defendant identified in Paragraphs 58 through 90 of this Complaint.  The nature of these releases or threatened releases is based, in part, on the specific public documents referenced and described in Paragraphs 58 through 90 above.

94. As set forth above, the presence of hazardous substances in the soil and/or groundwater at the facility or facilities owned and/or operated or formerly owned and/or operated by each Defendant identified in Paragraphs 58 through 90 of this Complaint demonstrates that a release occurred at each facility.

95. Public records identify the Defendants that own and/or operate a facility where there has been a release or disposal of petroleum hydrocarbons or formerly owned and/or operated a facility at the time petroleum hydrocarbons were released or disposed of at facilities with VOC-contaminated groundwater as likely sources of the hazardous substances that have impacted or threaten to impact RID's wells because petroleum hydrocarbons facilitate natural biodegradation of VOCs, thus generating and releasing new hazardous substances into the environment.

a.     Upon information and belief, and based in part upon the positions of ADEQ and the EPA, these newly generated and released hazardous substances from Defendants'

facilities are the same VOCs that have impacted or threaten to impact RID's wells and violate applicable aquifer water quality standards, and specifically include the following hazardous substances:  TCE; 1,1-DCA; 1,1-DCE; and cis-1,2-DCE.

b.      These newly generated and released hazardous substances are neither indigenous to, nor derived from, petroleum or its chemical fractions.  Thus, these newly generated and released hazardous substances are neither petroleum, nor petroleum hydrocarbons.

96. The generation and release of new hazardous substances with no human involvement has been broadly interpreted as a basis for CERCLA liability:  the disposal of a non-hazardous substance, which itself contains or emits no hazardous substances, results in CERCLA liability when its presence at a facility results in the release of hazardous substances into the environment.

a.      Thus, upon information and belief, and based upon the positions of ADEQ and the EPA, Defendants that have released or disposed of petroleum hydrocarbons at facilities with VOC-contaminated groundwater are responsible for the release of new hazardous substances into the environment that have impacted or threaten to impact RID's wells and violate applicable aquifer water quality standards.

97. The hazardous substances that have been released or threatened to be released from the facilities owned and/or operated or formerly owned and/or operated at the time of the release or threatened release by the Defendants identified in Paragraphs 58 through 90 of this Complaint have migrated and contaminated or threaten to migrate and contaminate the groundwater underlying the WVBA WQARF Site in violation of applicable aquifer water quality standards, and have impacted or threaten to impact RID's groundwater supply wells which are located in the WVBA WQARF Site.

98. As a result of the releases or threatened releases of hazardous substances from the facilities owned and/or operated or formerly owned and/or operated at the time of the

release or threatened release by the Defendants identified in Paragraphs 58 through 90 of this Complaint, G&K, on behalf of RID, has incurred necessary response costs as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25) and, therefore, is entitled to bring this action against the Defendants.

99. Pursuant to this initial claim, G&K, on behalf of RID, has incurred necessary response costs relating to the investigation, development and implementation of the required response actions approved by ADEQ in the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan under the oversight of ADEQ as set forth in Exhibit B.  These costs include, but are not limited to, the costs of: (1) investigating, monitoring, assessing and evaluating the hazardous substances, the releases and threatened releases of those hazardous substances, and the identification of the facilities and parties responsible for those releases and threatened releases; (2) investigations and studies to evaluate the scope of the contamination and response options; (3) preparation of the proposed ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan; (4) the administrative process and approval of the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan; (5) the selection and procurement of necessary consultants and contractors; and (6) the evaluation, design, construction, and operation of treatment systems to implement the ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan.

100.   G&K, on behalf of RID, has incurred other necessary response costs not covered by this initial action and expects to incur future necessary response costs in addressing and responding to the contamination of RID's groundwater supply wells and completing the work set forth in the ADEQ-approved ERA, RID-95 Wellhead Pilot Treatment System, Modified ERA, FS Report and O&M Plan.

101.   In order to eliminate any uncertainty that G&K's incurred costs were

substantially compliant with the NCP, G&K, on behalf of RID, substantially complied with the requirements identified by EPA as potentially applicable to private actions as discussed in Paragraph 52 and Exhibit A.  *See* 40 C.F.R. § 300.700(c)(5)-(7); 55 Fed. Reg. 8666, 8794 (1990).

102.    Each Defendant identified in Paragraphs 58 through 90 of this Complaint is jointly and severally liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for the necessary response costs G&K, on behalf of RID, has incurred, and each Defendant is jointly and severally liable for all necessary response costs G&K, on behalf of RID, may incur that are substantially compliant with the NCP requirements applicable to private actions.

WHEREFORE, G&K requests entry of Judgment in this initial action against each of the Defendants identified in Paragraphs 58 through 90 of this Complaint, as follows:

a.      awarding G&K, on behalf of RID, its recoverable response costs under this initial action in responding to the releases or threatened releases of hazardous substances from the facilities owned and/or operated or formerly owned and/or operated by the Defendants, with interest from the date of expenditure;

b.      declaring each Defendant jointly and severally liable under subsequent actions brought by G&K, on behalf of RID, to recover costs pursuant to 42 U.S.C. § 9613(g)(2) in addressing and responding to the releases or threatened releases of hazardous substances from the facilities owned and/or operated or formerly owned and/or operated by the Defendants;

c.      For such other and further relief as the Court deems just and proper.

### COUNT TWO

### (Quasi Contract, Unjust Enrichment, Restitution)

103.    G&K incorporates the allegations contained in paragraphs 1 through 102 herein by reference.

104.    The Defendants identified in Paragraphs 58-59 and 61 through 90 of this Complaint had and continue to have a duty under CERCLA, 42 U.S.C. §§ 9601, *et seq.*, and under Federal and Arizona common law to respond to the releases or threat of releases of hazardous substances from the facilities owned or formerly owned by the Defendants.

105.    G&K, on behalf of RID, has performed the duty of Defendants identified in Paragraphs 58-59 and 62 through 90 of this Complaint by supplying services immediately necessary to protect public health and safety.  Such services include, in addition to responding to the release or threatened release of hazardous substances from the facility owned and/or operated or formerly owned and/or operated by the Defendants, the employment of attorneys and consultants for the purposes of negotiation with EPA and ADEQ with respect to the investigation, evaluation, development, design, and implementation of effective response actions.

106.    G&K's performance of services described in this Complaint has conferred benefits on and unjustly enriched the Defendants identified in Paragraphs 58-59 and 62 through 90 of this Complaint.

107.    G&K's performance of services described in this Complaint was not expected or required, and has caused and is causing the unjust impoverishment of G&K, on behalf of RID, due to its expenditure of resources to supply those services, which was and is the duty of Defendants identified in Paragraphs 58-59 and 62 through 90 of this Complaint.

108.    The Defendants identified in Paragraphs 58-59 and 62 through 90 of this Complaint are individually and/or jointly liable to G&K, on behalf of RID, for the value of benefits conferred on them by G&K pursuant to Federal and Arizona state law.

WHEREFORE, RID requests entry of Judgment against each of the Defendants identified in Paragraphs 58-59 and 62 through 90 of this Complaint, as follows:

a.    For the amounts expended by G&K, on behalf of RID, that have unjustly enriched Defendants identified in Paragraphs 58-59 and 62 through 90 of this Complaint;

b.    For a declaration that Defendants will be liable for services which may be provided by G&K, on behalf of RID, in the future;

c.    For G&K's reasonable costs and attorneys' fees incurred as a result of having to bring this action; and,

d.    For such other and further relief as the Court deems just and proper.


RESPECTFULLY SUBMITTED this 16th day of December, 2016.

                               GALLAGHER & KENNEDY, P.A.

                               By /s/ Michael K. Kennedy
                                   2575 East Camelback Road
                                   Phoenix, Arizona 85016-9225
                                   Attorneys for Plaintiff Gallagher &
                                   Kennedy, PA

### Notice of Action

Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(l), G&K has provided copies of this Complaint on December 16, 2016, to the Attorney General of the United States and to the Administrator of the U.S. Environmental Protection Agency via overnight mail.

GALLAGHER & KENNEDY, P.A.

By */s/ Michael K. Kennedy*
      2575 East Camelback Road
      Phoenix, Arizona 85016-9225
      Attorneys for Plaintiff Gallagher &
      Kennedy, PA