1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF ARIZONA

3

4  Gallagher & Kennedy, PA,        )
                                   )
5           Plaintiff,             )
                                   )  CV-16-4447-PHX-DAE(BGM)
6       vs.                        )
                                   )  Tucson, Arizona
7  City of Phoenix, et al.,        )  October 4, 2018
                                   )  2:02 p.m.
8           Defendants.            )
   _____ )
9

10

11

12            REPORTER'S TRANSCRIPT OF PROCEEDINGS

13

14         CASE MANAGEMENT AND STATUS CONFERENCE

15        BEFORE:  THE HONORABLE BRUCE G. MACDONALD
                   UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21  Cheryl L. Cummings, RDR-CRR-RMR
    Official Court Reporter
22  Evo A. DeConcini U.S. Courthouse
    405 West Congress, Suite 1500
23  Tucson, Arizona 85701
    (520)205-4290
24

25  Proceedings Reported by Stenographic Court Reporter
    Transcript Prepared by Computer-Aided Transcription

```
 1  APPEARANCES

 2      For the Plaintiff:
            Gallagher & Kennedy, PA
 3          By:  MICHAEL K. KENNEDY, ESQ.
            By:  MARK C. DANGERFIELD, ESQ.
 4          2575 East Camelback Road, Suite 1100
            Phoenix, Arizona 85016
 5

 6
        For Defendant City of Phoenix:
 7          Perkins Coie, LLP
            By:  CHRISTOPHER D. THOMAS, ESQ.
 8          P.O. Box 400
            Phoenix, Arizona 85001
 9

10
        For Defendant Maricopa County:
11          Maricopa County Attorneys Office
            By:  MAXINE S. MAK, ESQ.
12          222 North Central Avenue, Suite 1100
            Phoenix, Arizona 85004
13

14
        For Defendant Prudential Overall Supply:
15          Lewis Roca Rothgerber Christie, LLP
            By:  STANLEY B. LUTZ, ESQ.
16          201 East Washington Street, Suite 1200
            Phoenix, Arizona 85004
17

18

19

20

21

22

23

24

25
```

```
 1                  P R O C E E D I N G S
 2        (Proceedings commenced at 2:02 p.m., as follows:)
 3             THE CLERK:  In civil matter 16-4447, Gallagher &
 4   Kennedy, PA, vs. City of Phoenix, et al., on for a scheduling
 5   conference.
 6             Counsel, please state your appearances.
 7             MR. KENNEDY:  Good afternoon, your Honor.  I'm Mike
 8   Kennedy and this is my partner, Mark Dangerfield.
 9             THE COURT:  Thank you.  And good afternoon
10   Mr. Kennedy and Mr. Dangerfield.
11             MR. DANGERFIELD:  Good afternoon.
12             MR. THOMAS:  Good afternoon, your Honor.  Chris
13   Thomas from Perkins Coie for the City of Phoenix.
14             THE COURT:  Thank you.  Good afternoon, Mr. Thomas.
15             MS. MAK:  Good afternoon, your Honor.  Maxine Mak,
16   Maricopa County Attorney's Office on behalf of Maricopa
17   County.
18             THE COURT:  Thank you.  Good afternoon, Ms. Mak.
19             MR. LUTZ:  Good afternoon, your Honor.  Stan Lutz
20   with Lewis Roca Rothgerber Christie on behalf of Prudential
21   Overall Supply.
22             THE COURT:  Thank you, Mr. Lutz.  Good afternoon.
23             And I appreciate you all coming today.  We are here
24   on a status conference to address some issues.  I did receive
25   the joint report which I appreciate.  I think we need to
```

1      address a few things.

2              We need to address, No. 1, if a motion to dismiss is

3      going to be filed by the defendants, which I understand is

4      forthcoming, a briefing schedule on that.  So it's my

5      understanding that's one thing we need to talk about.

6              So I want to make sure I've got everything on the

7      table, here.

8              The second issue has to do with the plaintiff's

9      motion for partial summary judgment and what we do with that.

10             And also, I think I probably should at least address

11     to some extent, I know that there's a Rule 56(d) issue

12     regarding that motion and maybe just find out what that's all

13     about.

14             So I think that's what we're here on.  Mr. Kennedy,

15     I don't know if there's anything -- does that sound right?

16             MR. KENNEDY:  Yes, your Honor.

17             THE COURT:  Okay.  Please, go ahead.

18             MR. KENNEDY:  It's a lot smaller cast than --

19             THE COURT:  I'm happy to see that.

20             MR. KENNEDY:  So we might have cut into your ticket

21     revenues, but I think that those are the primary issues.

22     There might be some offshoots of those, but certainly those

23     are the primary issues, your Honor.

24             THE COURT:  Okay.  Great.

25             Mr. Thomas and Ms. Mak?

```
 1              MR. THOMAS:  I think those are them.  There's the
 2   related issue about what happens with discovery --
 3              THE COURT:  I understand that as well.
 4              MR. THOMAS:  -- and, in part, on the motions for the
 5   summary judgment.
 6              THE COURT:  So I'm inclined to start wherever you
 7   think I ought to start.  So Mr. Kennedy, I'll let you start
 8   and just tell me where you think we ought to start and I'll
 9   take it from there.
10              MR. KENNEDY:  Well, I could cut right to the motion
11   to dismiss, but I think I'd like to provide a little
12   background if I could --
13              THE COURT:  Sure.  Absolutely.
14              MR. KENNEDY:  -- and if it's not inappropriate.
15              You did see that with the two case -- there's quite
16   a divergence between the two case management plans but,
17   basically, occasioned by a single issue.  But I think really
18   the fundamental difference in the two plans -- alternative
19   plans that have been presented really stem from what the
20   plaintiff and the defendants say this case is all about.
21              The defendants in their joint report on page 11 say
22   that Gallagher & Kennedy's claims arise out of the efforts of
23   the law firm and RID to export central Phoenix groundwater to
24   the west valley for use as drinking water and then goes on to
25   explain what we're here about and what this case arises from
```

1    is nothing but a $1.9-billion scheme.  That's the word that's

2    used.

3              I think a better statement of why we're here,

4    your Honor, a much more accurate statement of why we're here

5    is provided in our motion for summary judgment; right at the

6    beginning of motion for summary judgment.  I don't know and

7    don't expect that the Court has had the opportunity to read

8    that yet, but this is the description of this case.  This case

9    arises from a commingled plume of contaminates contributed to

10   by a number of industrial facilities which traveled through

11   the groundwater to pollute more than 20 wells in western

12   Phoenix operated by RID.

13             So we spent a lot of time over the years not

14   addressing what this case is about.  We've addressed a lot of

15   peripheral issues.  You've seen some of those.  Many of those.

16   This is a serious problem, and I would offer this statement as

17   to the severity of this problem.  This is a quote:  Kind of

18   astounds me, to be honest with you, as to why the public

19   entities here didn't step up more forcefully on all bases to

20   do something about what is admittedly a very serious problem.

21   I don't think anybody disagrees, or if they do I don't know on

22   what basis they could possibly suggest that there aren't

23   plumes of very deadly carcinogenic chemicals floating around

24   under the city of Phoenix, Arizona.  I don't think anybody

25   disagrees, or if they do I don't know on what basis or how

1   they could suggest that there aren't plumes of very deadly

2   carcinogenic chemicals floating around underneath the city of

3   Phoenix, Arizona.

4           That quote is from Judge David Ezra at a hearing on

5   February 28th, 2017, page 38 of the transcript.

6           So there is significant disagreement on the very

7   fundamental basis on which we're going to construct this case

8   management plan going forward.  And the defendants are going

9   to suggest or have suggested that, when they suggested it

10  arises from this get-rich-drinking-water scheme, that's what

11  they want to examine.  That's what they want to pursue, that's

12  what they want to do discovery about, and that's what they'd

13  like you to focus upon.

14          But here's what's -- I want to, if I could, just

15  make a couple of points as to what they say the case is about

16  and then return to what I think the case is about and then

17  address your two concerns.

18          It's important for me to tell the Court that over

19  the eight or nine years of our representation of RID and since

20  the beginning of that representation, Gallagher & Kennedy has

21  not received one dollar in legal fees.  It's more than ironic

22  to be standing in this courtroom talking about a get-rich

23  scheme when that is the fact.

24          With regard to that fee agreement, Judge Ezra has --

25  with regard to the fee agreement between Gallagher & Kennedy

1   and RID, Judge Ezra -- and I think you have familiarity with

2   that as well, your Honor.  But this is from Judge Ezra that

3   same date:  I don't think there's anything inherently illegal

4   or unethical about it, and I don't want to leave that

5   impression that I thought that somehow this was untoward,

6   illegal, unethical, or something like that.

7            That's what Judge Ezra said after all the varying

8   claims about the fee agreement that we have with RID.

9            More importantly and more to the point of this

10  get-rich scheme, Judge Ezra said at a hearing on

11  November 22nd, 2016, on page 26:  While the potential profit

12  derived from the sale of remediated water may act as an

13  incentive to G&K to continue funding the response cause both

14  now and in the future, there is no evidence that any sale of

15  remediated water has occurred or is certain to occur.  In

16  fact, the agreement clearly contemplates that Gallagher &

17  Kennedy may never receive any compensation for the response

18  costs that it has incurred.

19            Well, so far the last part of that is prophetic, but

20  exportation of groundwater to drinking water is not now and

21  may never be the issue in this litigation.  That concept

22  involves a vast array of issues far from completely identified

23  or characterized in defendant's report.  It's certainly not

24  worthy -- it's so far down the road, it's not worthy of any

25  status as our position in considering what we do now.  What we

1    do today in this case.

2             You're familiar -- as I said, you're familiar with

3    much of the history over the past eight years, but rather than

4    deal with the fundamental issues that CERCLA says we're

5    supposed to do promptly and expeditiously, cleaning up a

6    massive plume of deadly chemicals, the defendant polluters

7    have used and at times invented approaches that are intended

8    just to delay and distract the Court from the fundamental

9    CERCLA issues.  I don't know what the defendants are going to

10   say today, your Honor, with regard to these issues other than

11   what's in the joint report.  I do know when I walked in I was

12   handed some charts and some other materials that I suspect

13   what we are going to hear today is, yet, there are some other

14   issues recently invented that for some reason we need to pay

15   heed to now and that need to move to the front of the line for

16   consideration.

17             That shouldn't happen.  I don't know what they are,

18   but I don't need to know what they are.  There aren't any

19   issues out there that have to do with the sale of water,

20   drinking water.  None of those issues should at this point --

21   after what has happened over the last eight years, no issue

22   should move to the front of the line save the motion to

23   dismiss.  I understand that that moves to the front of the

24   line not contending otherwise, and I'll be there in just a

25   minute.  I promise.

1          THE COURT:  And I'm presuming I've got the same

2     documents.  These were just handed to me as well.  That's what

3     you're referring to, the two maps?

4          MR. KENNEDY:  The two maps.  And I believe there's

5     an order, your Honor, from Judge Tuchi of last Wednesday, I

6     believe.

7          THE COURT:  I have that as well.  Thank you.

8          MR. KENNEDY:  So the road that we have traveled has

9     involved conflicts of interests, motions to dismiss that were

10    denied, all of them, wholesale denial, unsuccessful attempts

11    to parley conflicts that were raised at the beginning, and to

12    complete disqualification of Gallagher & Kennedy and the RID

13    litigation.  And then we had efforts to have us disqualified

14    in administrative proceedings that were denied.  There was no

15    wholesale disqualification.  You may even recall that

16    Judge Zlaket appeared on behalf of us at a couple of those

17    issues.  All the time --

18         THE COURT:  I may not be intimately involved with

19    some of the other issues.  I was intimately involved in that

20    decision so I remember that well.  Thank you.

21         MR. KENNEDY:  But all the time, the defendants have

22    been steering the Court clear of the undisputed facts, that

23    they are the polluters causing this plume that is threatening

24    the city of Phoenix.

25         So the fact that defendants would suggest to this

 1   Court in their joint report that this case arises from a

 2   get-rich-fee-sale-of-drinking-water agreement is really

 3   nothing more than we've seen before.  That they are now asking

 4   that -- I assume they're going to ask, as hinted at and

 5   alluded to in their joint report, to focus upon an analysis of

 6   all those issues that may exist down the road, decades down

 7   the road, dubbed by Judge Ezra as not having occurred and not

 8   certain to occur.  It's really just another Hail Mary intended

 9   to forestall this Court's consideration of what this case is

10   about.  Pure and simple, from day one nine days ago,

11   your Honor, it's about holding these what are now admitted

12   polluters accountable under CERCLA for the creation of the

13   deadly plume that threatens the city of Phoenix.

14           So what we have done, in part energized by some

15   comments made by Judge Ezra at our most recent status

16   conference, so what we have done is assembled admissions that

17   have been made by these three parties and combined those with

18   rulings by Judge Ezra, along with some supporting

19   determinations made by ADEQ.  That is the foundation for our

20   motion for partial summary judgment.  It is a motion that

21   seeks partial summary judgment on the basis of liability only.

22   It was filed on September 12th.

23           The other significant step that we alluded to

24   earlier is that shortly after filing that motion, we dismissed

25   the remaining defendants in the litigation so that now there

1    are only three defendants.

2          So now, finally, as promised, the motion to dismiss.

3    We don't have any objection to them filing the motion.  We

4    would ask, your Honor, that it be filed sooner rather than

5    later.  We do have some indication based on what was filed by

6    these three defendants in December, we have some indication as

7    to what the basis for the motions will be.  Certainly, we're

8    not trying to suggest that they're bound by that, nor have we

9    made any effort to burden you with trying to decide whether

10    the issues that they raised or could be raised have already

11    been resolved.  Just, let's have the motions filed.  Let's

12    brief the motions.

13          We would like to have 30 days.  The motion -- the

14    three motions that were filed back in December, I believe all

15    three of them included a motion to dismiss for lack of

16    jurisdiction so that would afford us 30 days to respond, so I

17    would ask for 30 days to respond.  I'm fine with whatever the

18    Court sets as to how long after this conference those motions

19    should be filed.  They're pretty much in the can.  I don't

20    think we need a long time.  And that they be briefed in

21    accordance with the rules.

22          The defendants have suggested that no discovery be

23    conducted during pendency of the motion to dismiss, and we

24    have no objection to that.

25          Do you have any other questions, your Honor, with

1   regard to the motion to dismiss?

2          THE COURT:  No.  And I know this is a bit of a

3   dream.  I think you suggested, Mr. Kennedy, 7 days to file.

4   They suggested 30 days to file it.  And then the responses,

5   we're talking I think everyone pretty much agrees 30 days and

6   15 days.  So I don't think there's a huge disagreement about

7   that.

8          MR. KENNEDY:  I'm okay with 30 days.  I would like

9   it to be sooner.

10          THE COURT:  I understand.

11          MR. KENNEDY:  The 7 was almost a frame of 30, but

12   that is not of significance right now.  So I can agree to

13   30 days if that's what -- I guess maybe the appropriate

14   inquiry would be how much do they need.  And whatever they

15   need up to 30 days I'm fine with.

16          THE COURT:  Okay.  And so that, I think you've

17   addressed the concerns on the motion to dismiss.  So thank

18   you.

19          MR. KENNEDY:  So most of the disagreement relates

20   with what to do with the motion for partial summary judgment.

21          THE COURT:  Right.

22          MR. KENNEDY:  And I've given you the primary basis

23   for it, being admissions made primarily in the other

24   litigation that you're familiar with, the RID litigation --

25          THE COURT:  Right.

1        MR. KENNEDY:  -- during the course of discovery and

2   in the answers, and also in Judge Ezra's rulings, and also in

3   some ADEQ findings.  And I think I would like to just preview

4   the motion for you briefly and hopefully pull up short of

5   anyone thinking that I'm arguing the motion.  That's really

6   not why we're here today, any of us.

7        But it is of note that the three parties admit that

8   their properties qualify as CERCLA facilities, and that there

9   have been releases of hazardous substances from those

10  facilities.  So those are the two first elements.  Those have

11  been admitted in various pleadings and various responses in

12  the other case.

13       And then as to rulings by Judge Ezra, Judge Ezra

14  left little doubt when he said, quote, G&K has incurred

15  response costs that are necessary and substantially compliant

16  with the NCP.

17       And that is in the November 22nd, 2016, order.

18       In that order, the Court framed the issue that it

19  was considering, and it says as follows, quote:  Moving

20  defendants challenge only the third element of plaintiff's

21  prima facie case under Section 9607(a), whether the release or

22  threatened release caused RID to actually occur necessary

23  response costs consistent with the NCP, end quote.

24       The outcome of that motion, pure and simple, yes,

25  G&K has incurred response costs.  That's on pages 28, 32, and

1    38 of that order.

2           In the motion, in a footnote I believe on page 15,

3    the Court acknowledges that the second part of that third

4    element, whether the response costs were necessary and

5    consistent with the National Contingency Plan was the subject

6    of yet another motion that was about to be heard.  So the

7    motion that was resolved on November 22nd, 2016, was that G&K

8    had incurred the response costs.

9           So we fast-forward then to an order of March 15,

10   2017, where the Court ultimately ruled upon the motion

11   referred to in the footnote in its November 22nd order.  And

12   quoting from that order, in considering RID's overall methods,

13   however, the Court finds that while certainly not in perfect

14   compliance, RID did, as a matter of law, substantially comply

15   with the applicable requirements set forth in the National

16   Contingency Plan.

17          That's at page 42.

18          Now, what's of interest is that you may have noted

19   in the joint report the defendants say, well, as to this third

20   element that is addressed, your Honor, by the November 22nd,

21   2016, and the March 15, 2017, orders, the third element, what

22   the plaintiffs say in their joint report is that, oh,

23   Judge Ezra dismissed, put on hold the motions for summary

24   judgment filed in that other case, said they would be --

25   needed to abide discovery of the experts and 60 days and they

1    could be filed.  And somehow that's controlling on what ought

2    to happen with our motion for summary judgment.

3           There's one point I really want to make today,

4    Judge.  All of that took place, all of that took place before

5    Judge Ezra ruled on those two motions having to do with the

6    third element.  He made all of those rulings.  And whatever

7    impact they had at the time, they had little, if any, impact

8    when he ultimately got to the issue.  He didn't say we have to

9    defer anything.  We don't need any more.  He ruled that

10   Gallagher & Kennedy had incurred costs, and that there was

11   compliance with the National Contingency Plan.  Those are

12   transportable.  Our position is those are transportable and

13   serve to satisfy the third element, and what Judge Ezra did

14   with regard to other motions for summary judgment in the other

15   case is totally irrelevant.

16          I think we're going to hear today -- and I'm going

17   to wrap up, but I think we're going to hear today about water,

18   current water standards, what may exist in the canal, what's a

19   good remedy.  And here's the second most important point that

20   I'd like to make today.  Since the beginning of this process,

21   not just the litigation process but the administrative

22   process, as this matter winded its way through the

23   administrative process, primarily the Arizona Department of

24   Environmental Quality, RID was resisted every step of the way

25   by these three defendants, by the other 25 defendants.  Every

```
1    step was contested.  Hotly contested.  Energetically
2    contested.  The energy that you felt on the bench as this
3    group was assembled before you is there.  It was, in some
4    respects, just as this litigation has been.
5              At the end of day, ADEQ ruled that with an early
6    response action, a modified early response action, a
7    feasibility study, they approved a remedy that we have been
8    implementing; not 100 percent of the time because we don't
9    have the money to do it, but we are implementing the remedy
10   and the pumping at the wells and the treatment with an
11   approved remedy.
12             Now, I know in the joint report there are arguments
13   that the defendants are going to make about water that have
14   been made since day one.  They come in different forms.  A lot
15   of them are going to relate to Element Three.  But these
16   arguments have all been made.  Many of them -- and that's just
17   at the administrative phase.  All of these arguments were made
18   to Judge Ezra for Judge Ezra's benefit and ruling on
19   November 22nd, 2016, and March 15 of 2017.  So I don't know
20   exactly what's coming, but I'm pretty certain that we're going
21   to hear arguments that have been made.  And arguments that,
22   even if they're new, if they don't relate to what do we do
23   about the folks who have admitted -- we can no longer ignore
24   the three folks here who, in pleadings, have admitted that
25   they have polluted.  We can't ignore that anymore.  It took us
```

1    a long time to get here.

2              In the other case, your Honor, you know how much

3    discovery there was in a short period of time.  Once you fired

4    the gun and said let's go do discovery, there was all sorts of

5    discovery done.  Thirty-two days of discovery.  We had an

6    expert deposed for five days, RID did, with obviously RID

7    being the party there.  There were water experts.  There were

8    RID folks.  There has been all sorts of discovery.  Some of

9    that is going to be more appropriate, your Honor, when we talk

10   about Rule 54(d).  But that's how we got here.

11             What we would like is we just want to have the same

12   thing they have.  We want to have consideration of our motion

13   for summary judgment.  We don't want to have to be subjected

14   to more discovery that doesn't relate to liability.  That's

15   all we want.  We want to be on the same track that we concede

16   that they can be on; and that is, we'd like to have our motion

17   heard.

18             Now, they say, well, we need this and we need that.

19   On this side of the ledger with the motion for partial summary

20   judgment, there's protection they have.  We are not trying to

21   deny them the protection of Rule 54- -- excuse me, 54(d).

22             THE COURT:  I knew what you meant.

23             MR. KENNEDY:  I'm sorry.  And in fact, the joint

24   report from the defendants suggested that they are intending

25   to file a Rule 54(d) report prior to October 13th.  That's

 1   fine.  That's just all the more reason we ought to have an

 2   unfettered road to have, finally, our motion heard.  If you or

 3   Judge Ezra disagree with our motion, it's easily remedied.  A

 4   stroke of the pen it can be denied.  But we'd like to be

 5   heard.  We have patiently and assiduously compiled the

 6   information that we believe -- and we've earned the right and

 7   that it's a worthy motion to present.

 8           And there's a safeguard.  If there are specific

 9   issues, 54(d) gives them the right, as they intend to

10   exercise, then -- I'm not sure we're going to agree on what

11   that gives them the right, but it's a fair discussion to have.

12   And then let's get on with it and have a resolution.

13           It's also -- a couple more points and I'll sit down.

14           What's also of interest to me is that a motion for

15   summary judgment has become a favored means for resolution of

16   significant CERCLA cases.  And it's a bit counterintuitive.

17   You tend to think we have these complex CERCLA cases,

18   square-peg-round-hole, summary judgment.  As recent as

19   September 14th or 15th, the Ninth Circuit affirmed a summary

20   judgment.  The Castaic Lake Agency case is a Ninth Circuit --

21   it's not a Ninth Circuit case, excuse me, but it's a motion

22   for summary judgment case.  So to the extent folks might have

23   this notion that, yeah, you know, summary judgment cases need

24   to be simple, well, first of all, we think this is now a

25   pretty simple case.  But motions for summary judgment, summary

1   disposition have become more and more -- as I said, it's

2   the -- I cited the Pakoota case.  I cited it in the joint

3   report.

4           Also, your Honor, as to why we ought to pursue the

5   motion for summary judgment in some sort of -- just not

6   isolation but in a fair way, Rule 56(g), even if we're wrong

7   on some issues, Rule 56(g) gives the Court an opportunity to

8   narrow the issues by making findings as to certain of the --

9   certain facts.  And a case like this where there's no real

10  dispute on the issues and the elements that lay out, you know,

11  it's possible, we don't think so, certainly not conceding, but

12  it's possible that the Court would say, well, these three

13  issues are not disputed and there is no genuine issue of

14  material fact.  And here, here's what I find is the material

15  issue of fact.

16          So there are all sorts of opportunities here.  We're

17  trying to narrow this thing and make it manageable.  56(g)

18  also affords the Court a tool to narrow the issues which, as I

19  understand it, was something that was clearly on Judge Ezra's

20  mind the last time we were together.

21          Last issue.  I skipped a couple.

22          So what about some discovery other than 56(d)

23  discovery?  What about some discovery?  I don't think it

24  works, Judge.  It doesn't work for a lot of reasons.

25          First of all, the rules, Rule 26 sets the boundaries

1   for disclosure and discovery to be set by the claims made; the

2   claims made and the defenses.  Well, we don't have a

3   responsive pleading.  We don't have a responsive pleading

4   setting up what those defenses are, so you have that very

5   practical problem.  It's really just speculation to try to

6   forecast what are we going to do in way of discovery after

7   resolution of these motions.

8           And our position is that we ought to wait until both

9   of these motions are decided before we convene.  We'll know

10  the parties.  We can have a meaningful discussion without

11  duplication of who are the parties, what about third-party

12  practice, what about cross-claims.  It is really not -- I

13  don't want to say it's a waste of time, but it's not a very

14  efficient use of time to try to identify all the

15  contingencies.  And the folks that aren't affected aren't in

16  the courtroom today.  So that's why we think resolution of the

17  two motions, a fulsome 54(d) argument.  That gives the

18  defendants all they need for purposes of contending to our

19  turn.  Our turn.  Our number is up and we'd like to have it

20  heard.

21          And it doesn't create any burden or prejudice to the

22  defendants.  After all, your Honor understands why we're here

23  today and not three or four or five months ago.  We're here

24  because we just had an eight-month delay because the

25  defendants didn't join their motions.  And the judge -- we've

 1  just incurred nine months' delay.  And that happens.

 2          But in our responses we were aware of the problem.

 3  And our responses, we actually did what the defendants didn't

 4  do.  In our responses to those motions, we grouped them in

 5  five or six categories because we saw the problem and tried to

 6  deal with it.  So I don't think -- this is not a slow-play

 7  tactic.  We want to bring these motions on as fast as the

 8  Court can have them heard.  And with that in mind, there is

 9  absolutely, we think, just no legal or practical or logical

10  reason that these motions can't be heard together with 54(d)

11  being the only outlet for discovery.

12          Thank you, your Honor.

13          THE COURT:  Thank you, Mr. Kennedy.  I appreciate

14  it.

15          Mr. Thomas.

16          MR. THOMAS:  Thank you, your Honor.

17          I think the difference in the defendants' consensus

18  position and plaintiff's position was if the motions for

19  summary judgment are not deferred, which I believe will be

20  inevitable under 56(d) because that's exactly what happened

21  last time, then we have this unwieldy situation where, you

22  know, the motions for summary judgment -- and we're happy to

23  respond under 56(d) and explain why we don't think they can be

24  resolved or should be denied on the merits right now, but

25  the -- and I will give Mr. Kennedy the benefit of the doubt

1   since he was not in the case when much of this happened, but

2   the NCP consistency ruling that is mentioned in their motion

3   for summary judgment was issued by Judge Ezra with respect to

4   the small universe of costs that had been incurred by RID

5   rather than G&K.

6           Judge Ezra is in the best position, of course, to

7   decide whether the findings he made with respect to the RID

8   costs should be applied to the not-yet-specified G&K costs or

9   whether that's essentially dicta.  There's no doubt, however,

10  that we've been down this road before.  In the original case,

11  the Roosevelt Irrigation District moved for summary judgment

12  asking, as G&K has done here, that the Court decide not only

13  NCP consistency, but also decide the necessity issue and

14  decide that liability was joint rather than divisible or

15  capable of reasonable apportionment.

16          The targets of that motion including Honeywell, the

17  City's tenant, among others sought and obtained from

18  Judge Ezra relief under 56(d) on the grounds that inevitably

19  expert testimony would be required on both the necessity and

20  the divisibility issues.  That's mentioned among other places

21  in Docket 1200, the February 22nd, 2016, order.  We had a

22  similar discussion before you when we argued RID's motion for

23  protective order.  We had a discussion among other things

24  about whether we should be allowed to undertake discovery on

25  not only the profit motivation but other issues.  And your

1    ruling denying relief to RID, their Docket 1326, made

2    reference to the fact that it was necessary to again undertake

3    discovery on whether immediate treatment of the groundwater

4    pumped by RID to drinking water standards as necessary.

5           Let me divert for a moment since nothing would

6    please me more as counsel for the City than to get into the

7    merits of necessity.  You have a chart in front of you, and

8    let me sort of explain.  It's clear from the quotes that

9    Mr. Kennedy cited from Judge Ezra that RID's lawyers did a

10   wonderful job of creating the illusion that this is a

11   horrible, dangerous, toxic plume that everyone has ignored.

12   Let me point out a couple of things.

13          First, on this map you see west to east.  To the

14   north starting with RID 114, that's called the Salt Canal.  It

15   receives water pumped from, well, now nine different wells

16   because the casing collapsed in 114 so that well doesn't work

17   anymore.  The other canal to the bottom that begins with RID

18   104, that's the main canal.  And you see eventually to the

19   west the Salt and the main canals join together.

20          The overwhelmingly predominate source of water

21   that's conveyed in the main canal for irrigation purposes is

22   sewage effluent from the City of Phoenix 23rd Avenue

23   Wastewater Treatment Plant.  Neither RID nor G&K proposes that

24   water conveyed by the main canal ever be used by anyone for

25   drinking water.  Their proposal is limited to urging that

1   water conveyed by the Salt Canal today be linked to a pipeline

2   that doesn't yet exist and then be delivered by that new

3   pipeline for drinking water in the west valley.

4           Let me point out a couple of other facts on this

5   map.

6           There are today wellhead treatments on four RID

7   wells -- 89, 92, 95, 114.  Oddly enough, although RID and G&K

8   both have conceded that water in the main canal will never be

9   used for drinking and doesn't need to be treated to comply

10  with the irrigation standards, three of the four wellhead

11  treatment units they've installed are on wells that pump into

12  the nondrinking water source of water in the main canal.  The

13  fourth was on 114.  And previously, 114 was the well that

14  pumped the highest level of VOCs and essentially -- we had a

15  lot of testimony from Joel Peterson, the designer of the RID

16  remedy, and he basically said their goal was to have the

17  combined flow and the Salt Canal achieve drinking water

18  standards prior to the point at which it was connected in the

19  future to this new pipeline.

20          Well, as it turns out, without treatment it's highly

21  likely that, as we sit here today, that is, in fact, already

22  the case and that no treatment will be necessary for

23  achievement of drinking water standards at that point of

24  connection, even if you concede that that's the appropriate

25  one as opposed to, you know, the drinking water standards

1    obviously apply at the tap when you turn it on.  G&K has sort

2    of assumed that for some reason they apply at individual

3    irrigation well sites.  That's not the case.

4            But in any event, you will see the yellow box to the

5    left on the west side of the Salt Canal, the last time the

6    Salt Canal was sampled was in 2015.  At that time all the

7    wells were pumping and discharging into the Salt Canal, but

8    the treatment unit was not being operated.  So the combined

9    flow in the canal was basically raw groundwater pumped by RID

10   without treatment.  You will note that at that time,

11   three years ago, all of the VOCs sampled for were below

12   drinking water standards even without treatment with the

13   exception of TCE which was detected at a level of 5.86 versus

14   the drinking water standard at the tap of 5.0.  The quality of

15   the sort of incoming water pumped by wells that discharged to

16   the Salt has been improving rather dramatically in

17   recent years, in decades, in part because upgradients of 114

18   to the east is a hydraulic containment system funded by the

19   City and Motorola and Honeywell, which contains continued

20   westward migration of VOC contaminated groundwater.

21           We're now at the point it appears that, you know,

22   shutting off that continuing migration should allow and will

23   allow achievement of drinking water standards of the combined

24   flow and the Salt Canal without any treatment whatsoever.

25           That gets us to an interesting issue, and

1   Mr. Kennedy should know exactly what I was going to say

2   because I attached -- sent him an e-mail that's attached to

3   the joint status report regarding our request that they

4   acknowledge the obvious and just pull their motions for

5   summary judgment given the fact that 56(d) relief would

6   inevitably be required.

7           Additionally, since the Salt Canal water quality

8   data is so old now, we asked RID if we could go out and sample

9   to see what the condition of the system is now, the system

10  that Mr. Kennedy says is the horrible, toxic mess.  They told

11  us to get a subpoena.  We did.  And then both Mr. Kennedy and

12  RID objected to the subpoena.  If this is such a big problem

13  that requires immediate attention, it's kind of odd to wonder

14  why someone would not want to understand current conditions.

15          Well, the reason for that is in the Arizona

16  groundwater code as I think we've described in the past with

17  the motion for protective order, there are normally

18  restrictions on pumping groundwater in urban areas including

19  Phoenix.  And if you don't have a right to pump groundwater,

20  you can't do it with among other exceptions.  You are allowed

21  to pump groundwater if you're doing so for the purpose of

22  necessary Superfund remediation.  So if you've been puzzled

23  why RID and now G&K continually insist that perfectly suitable

24  irrigation water needs to be treated to drinking water

25  standards before mixing with sewage effluent and then being

1    devoted to irrigation use, or if you're wondering why G&K
2    doesn't want us to find out what the actual facts, what the
3    level of contamination if any is in the Salt Canal, the one
4    canal that they propose be used for drinking, it's because if
5    it becomes too obvious that no treatment is necessary for the
6    water in the Salt Canal, the only one they propose be used for
7    drinking at some point in the future, they lose the argument
8    they have for the exemption from the groundwater code.
9            The other document I left for you and for
10   Mr. Kennedy was a ruling in the water rights litigation before
11   Judge Tuchi.  In that ruling, Judge Tuchi basically rejected
12   RID's contention that they had an independent right to pump
13   groundwater indefinitely under state law.  So what's left to
14   be resolved in the water rights case is whether the contract
15   between RID's predecessor and SRP expires in wind, and also
16   whether certain restrictions on use of pumped groundwater set
17   forth in the Warren Act and possibly incorporated into the
18   contract by the parties themselves would apply.
19           So having lost, you know, the argument that they had
20   an independent water right was sort of the primary one they
21   made, continuing the pretense that it's necessary to treat
22   their irrigation water today to drinking water standards was
23   the fallback.  And it looks now like they were pressured into
24   thinking that they needed to have that in their back pocket.
25           Let me mention a couple of things since the City's

1  good name was drug through the mud.

2          In addition to helping fund operable Unit 2, which

3  eliminated the westward migration of contamination into the

4  RID wells pursuant to Consent Decree in about 1999, the City's

5  done a lot of other things.  We were one of the lead funders

6  of a feasibility study prepared by Haley and Aldrich.  You, no

7  doubt, recall at least a bit from the last case that RID had

8  the proposal which was let's put wellhead treatment on some of

9  our ag wells and treat the pumped water to drinking water

10  standards immediately.

11          We proposed conversely that the treatment, which is

12  about 1.9 million bucks a year per well, be deferred until

13  there was some less than highly remote possibility that there

14  would be drinking water use.  It has always been the case

15  under the federal Superfund Act and especially the state

16  counterpart thereto that the end use of impaired water is a

17  factor in what the clean-up standards should be and when they

18  should be met and where.

19          Our proposal, by the way, as some of the RID

20  pleadings pointed out, we proposed not to immediately treat

21  irrigation water to drinking water standards but, rather, to

22  defer treatment until a time when that use was less remote.

23  There were scenarios, however, that the remediation proposal

24  proposed by a group including the City actually would have

25  produced a more costly remedy.  So again, I try not to be

 1   personally offended in this life, but frankly it's offensive

 2   that Mr. Kennedy painted the City as motivated by its interest

 3   and avoiding -- protecting its own residents and avoiding

 4   clean-up costs.

 5           Let me make one other point on that, and that is

 6   that the liability of the City asserted by Gallagher & Kennedy

 7   arises from the City's status as landlord for about half of

 8   the Honeywell facilities at Sky Harbor Airport.  Honeywell

 9   obviously is not in this case.  Motorola Freescale is not in

10   this case.  G&K left out everyone that had a disqualification

11   argument in the last case.  It's a matter of point of record

12   that Honeywell has agreed contractually to defend and

13   indemnify the City of Phoenix to the extent that the City may

14   have clean-up liability arising out of Honeywell's releases.

15   So in the battle over whether clean-up costs are necessary, we

16   don't have a financial stake.

17           We have a huge stake in the fact that the impact at

18   central Phoenix aquifer is part of the city's assured and

19   adequate water supply.  We have a deed to file with the

20   Department of Water Resources, a document explaining how we're

21   going to be able to provide drinking water to our residents in

22   the next 100 years.  Part of our plan for doing so in the

23   event of drought conditions, which we are suffering from now

24   for about the 15th year in a row, is some day, if the surface

25   water supplies are inadequate, to return to pumping

1   groundwater and using that as a source of drinking water.  We

2   actually had some production wells that were part of the

3   city's drinking water system in the past, and we shut them

4   down in part because at that point DEQ was suggesting that the

5   prudent, appropriate and cost-effective thing to do would be

6   to avoid pumping in areas of impacted groundwater until you

7   needed that particular resource, because in the meantime

8   nature would reduce the contaminate levels all about itself.

9          That has, in fact, happened.  But in terms of the

10  concerns of the City here, it's overwhelmingly our concern

11  that if RID can get away with invoking this groundwater

12  exception and deprive the city of the groundwater supply

13  that's part of our drought planning, we're in a world of hurt.

14  And you know, the profit projections that G&K commissioned

15  assume that they could sell water to Goodyear, Buckeye, other

16  folks in the west valley for about $10,000 an acre-a-foot.

17  That's the source of the $1.9 billion estimated return on

18  investment.  If that figure is right and we have a drought and

19  we need to find a source of drinking water to replace what's

20  been pumped into the west valley, that's conceivably a

21  $1.9-billion cost to the residents of Phoenix.  We obviously

22  aren't eager to absorb that cost in any event.

23          One last point on the sampling.  We obviously think

24  that -- the parties have a disagreement about whether it's

25  necessary to treat irrigation water to drinking water

1    standards today or whether that can wait.  We also have

2    serious questions about whether treatment of the combined flow

3    in the Salt Canal is necessary at all, in part because the

4    regional levels have been dropping and in part because 114 is

5    no longer contributing to the mix.

6            We asked for two things on our subpoena.  One, we

7    wanted to sample at the first open area on the Salt Canal

8    where the yellow numbers are to see if under nontreatment

9    conditions the quality of the water is already below drinking

10   water standards.  We also wanted to look at 114 which has been

11   offline for a year and a half or so.  The casing has

12   collapsed.  We want to understand whether that well is some

13   day salvageable in which event there may be a need for

14   wellhead treatment at that well.  If that well can't be

15   salvaged, then, of course, it won't be necessary to treat it

16   in any fashion.

17           I think I've hopefully addressed everything.  Again,

18   I think Mr. Kennedy was mistaken about the breadth of

19   Judge Ezra's ruling on it's NCP consistency, and both the

20   necessity issues and the divisibility and apportionment issues

21   were expressly not resolved.  Today is not the day to argue

22   the 56(d) issue, but you can expect to see from defendants

23   some affidavits that explain, among other things, that an

24   expert hydrogeologist thinks there are any number of ways that

25   one might demonstrate the ability of harm or a reasonable

1  basis for apportionment.

2         With respect to the plausible migration pathway

3  issue referenced in G&K's motion, there's a modeler named

4  Peter Mock.  And he prepared a report submitted to Judge Ezra

5  in the context of motions to dismiss.  And Mock opined

6  generally that everything moves east to west.  He also opined

7  oddly enough that the flow path from Honeywell that he

8  projected would completely miss RID well 114 and the Salt

9  Canal.  So RID's own previous expert provided a basis for

10  divvying up the necessary costs if there are any in their own

11  filings.

12         With that I'll take any questions you may have.

13  Thank you.

14         THE COURT:  No.  I appreciate the information.

15         Let me ask a more pedestrian question.  What about

16  the motion to dismiss scheduling?

17         MR. THOMAS:  If we're now at 30 days, that's what we

18  proposed and we're fine with that.  None of us left in the

19  case were the principle author of the motion, and that's why

20  we asked for the time.

21         THE COURT:  No, I understand.

22         MR. THOMAS:  I think that's resolved.  We don't care

23  about the schedule for the response and reply brief after

24  that.

25         THE COURT:  And let me ask again a more basic

1    question.  I appreciate all of the information on the case.

2           It's my understanding that the defendants do propose

3    filing a single consolidated motion to dismiss.  That if there

4    are variances between the defendants, that individualized

5    issues will be addressed.  I guess my question is if you can

6    answer it, and this will be to all of you, if you answer it do

7    you intend to exceed the page limit?  If so, by how much.  I

8    know that's -- it may be hard to answer.  I just -- there are

9    some logistical issues.  I think Judge Ezra -- I hate to get

10   down to the weeds on the more pedestrian stuff as opposed

11   to -- the case is fascinating, I understand, but I need to

12   address some issues.

13          MR. THOMAS:  My fellow counsel may object, but I

14   don't see any need to exceed the page limitation.

15          THE COURT:  Well, that's okay.  You'll both have an

16   opportunity to speak, so thank you.

17          And I don't think we need to worry about, then, if

18   there are individualized issues, each defendant is entitled to

19   file a separate section regarding those individualized issues.

20          MR. THOMAS:  Yes.

21          THE COURT:  And then if I understand, what I'm

22   trying to sort out is I know that your position, Mr. Thomas,

23   and I believe the other defendants is that Gallagher & Kennedy

24   should just sort of withdraw their motion for partial summary

25   judgment, deal with the motion to dismiss, and then sort of

1    come back on the table.  That I think also may deal with any

2    of the third-party practice that is outstanding, which I may

3    ask you to address that as well.  But if not, I'm not sure I

4    can do anything other than say you're going to have to file

5    your Rule 56(d) motion.  Judge Ezra is going to have to come

6    back on a briefing schedule.  I mean, I'm just wondering where

7    I can go with that.

8              MR. THOMAS:  That's correct.

9              THE COURT:  I don't think I can force Mr. Kennedy to

10   withdraw their motion.  I could, but probably would not be --

11             MR. THOMAS:  Unfortunately, their interest in

12   pursuing the motion for summary judgment sort of made it more

13   difficult to deal with case management issues too far ahead

14   and third-party practices one obvious one.

15             THE COURT:  Right.  And those issues, -- it doesn't

16   matter.  I know all of this was sort of set before the motion

17   for partial summary judgment, so that sort of threw a wrench

18   in things, which is fine.  We'll deal with it.  But it does

19   affect the third-party practice, so what do we do about all

20   this?

21             Let's say that Mr. Kennedy says we need to move

22   forward on the motion for partial summary judgment.

23   Judge Ezra will have to address the Rule 56(d) motion.  And

24   then what do we do about everything else?

25             MR. THOMAS:  Here's what I suggest:  And that is,

```
 1    it's now inevitable that we'll need to file our 56(d).

 2              THE COURT:  Well, perhaps not, but maybe.

 3              MR. THOMAS:  And so I think what that means is that

 4    we'll need to come back and discuss third-party practice

 5    issues after resolution of the motions to dismiss and after

 6    it's known whether we'll get 56(d) relief or not.

 7              THE COURT:  Right.  And --

 8              MR. THOMAS:  My practical concern is I don't know

 9    that I can risk losing a motion for summary judgment on

10    liability arising out of Honeywell without Honeywell being in

11    the case.

12              THE COURT:  And I understand.  And I'm not trying to

13    advocate for all of you.  My responsibility here is directed

14    by Judge Ezra, but some of these issues I'm not sure we can

15    resolve today, quite frankly.

16              MR. THOMAS:  That's right.  And whatever happens, I

17    think we ought to come back and work on the future issues

18    after we know what happens on 56(d) and the motion to dismiss.

19              The second issue is should discovery be prohibited

20    in the meantime?  And I think at a minimum, I don't know if

21    RID is going to withdraw its objection to the subpoena.  It

22    sounded to me like, yesterday, that unless you ruled today

23    that all discovery including water quality sampling would be

24    stayed, that they probably would agree to let us go out there

25    and find out what's going on.
```

1        Additionally, there are --

2        THE COURT:  And let me make sure, are those -- if

3   you're saying that and I'm not sure necessarily, but you're

4   talking about those two items under the subpoena, that would

5   be the discovery you would be seeking in addition to any

6   Rule 56?

7        MR. THOMAS:  We have whatever we asked for in the

8   56(d) affidavits.

9        THE COURT:  I understand that.

10       MR. THOMAS:  And then there's one area that I think

11  we're lacking information, and that is RID had a lot of

12  disclosure about its costs.  There is a certain amount of

13  costs that Gallagher & Kennedy claims they occurred, including

14  Mr. Kimble's affidavit that $400,000 spent out of pocket.  We

15  don't know what that money was spent on, and I don't think

16  that Gallagher's assertion you shouldn't worry about that

17  because they're not seeking a specific judgment works even on

18  the NCP consistency issue because you can't really understand

19  if costs might be necessary or divisible without knowing what

20  those costs are.

21       THE COURT:  And I'm wondering, we may not reach an

22  agreement, but maybe we can reach a consensus as to what it is

23  you're seeking.  And I don't know if it's fair to ask you to

24  do that.  In addition, we understand that whatever items are

25  in the Rule 56(d) motion will be in that motion and that's

1  fine.

2          In addition to the items that you're seeking, any

3  discovery outside of that, I'm not -- can we reach a

4  consensus -- we may not reach agreement that you'll agree to

5  do that but consensus as to what may be.  Is it the costs?  Is

6  it the water samples?  Is that encompassed in Rule 56?  And if

7  that's not a fair question --

8          MR. THOMAS:  I'm certainly willing to give it

9  another shot.  You know, it strikes me that if G&K wants a

10  stay of discovery and for us to be limited to discovering only

11  what's provided for in 56(d), I don't think that meets any

12  sort of burden they would have to be the proponent of that.

13  Our request --

14          THE COURT:  You'll have an opportunity.  Thank you.

15          MR. THOMAS:  And I have no interest in doing a bunch

16  of discovery because we think some of the claims will be

17  eliminated by the motions to dismiss; for instance, the

18  petroleum exclusion theory.  But I would like to understand

19  whether the canal water needs to be treated or not, sooner

20  rather than later.  And some modest bit of explanation about

21  the G&K costs consist of would be valuable.  I think my

22  co-counsel may disagree with the later category.

23          THE COURT:  Which you're entitled.  I'll give you an

24  opportunity.  Just relax.

25          MR. LUTZ:  Your Honor, I was going to make a

1    suggestion.

2              THE COURT:  And I'm open to all the suggestions, and

3    you will have an opportunity to do that.

4              So Mr. Thomas, and once again you will also have an

5    opportunity to address it for the other defendants.

6              Realistically, I know that you said 30 days to file

7    the motion to dismiss.  My thought is just to make it very

8    clear from 30 days from today.  Is that going to create a huge

9    burden for you in terms of filing your motion to dismiss?

10             MR. THOMAS:  No, that's fine.

11             THE COURT:  Okay.  Is there anything else -- and

12   once again, I'll give everyone an opportunity to be heard on

13   any issue they want.  So I'm in no hurry here.

14             MR. THOMAS:  I think I've taken more than my fair

15   share.

16             THE COURT:  Well, I appreciate your time.  Thank

17   you.

18             Ms. Mak, I'll hear from you, please.

19             And while I do appreciate, I have some familiarity

20   with the history of the case; clearly, not to the extent that

21   Judge Ezra has.  And I do appreciate the information, but some

22   of it -- I hate, once again, to be so pedestrian.  Some of it

23   I just need to set a scheduling order, find out what we're

24   going to do with motion for partial summary judgment, talk

25   about Rule 56(d), and whether or not there's any discovery

 1   beyond that perhaps Mr. Kennedy and his firm would agree to.

 2   And you don't have to, but if maybe we can reach some

 3   consensus on that even if we can't reach agreement.

 4            So, please.

 5            MS. MAK:  So, your Honor, the County's position with

 6   respect to the motion to dismiss, I think the 30 days from

 7   today would be fine.  We'd like a little more time, but if the

 8   consensus is 30 days, the County doesn't have a problem with

 9   that as far as the briefing schedule with respect to following

10   the rules.  The County's --

11            THE COURT:  I'm sorry --

12            MS. MAK:  -- ongoing.

13            THE COURT:  -- I should have gone on.  My thought is

14   30 days from today, 30 days for the response, 15 days for the

15   reply.  That's my thought.  It's not an order yet, but that's

16   my thought, and I should have followed through with my

17   thought.  So, please.

18            MS. MAK:  And your Honor, if that's consensus and

19   your Honor's inclination, the County is perfectly fine with

20   that.

21            THE COURT:  Okay.

22            MS. MAK:  As far as addressing the partial motion

23   for summary judgment, as you know there will be Rule 56(d)

24   motion practice.  And your Honor is correct that it may be

25   that we won't be able to resolve some of those issues at least

1   until the 56(d) motion is revolved.

2           As far as -- you know, my colleagues have said there

3   is an issue with third-party practice.

4           THE COURT:  Right.

5           MS. MAK:  And it's the County's position that the

6   motions to dismiss should be resolved, and then we should

7   proceed with discovery, then expert discovery and so on.  So

8   again, it sounds like a lot of those issues might not be

9   resolved when we leave.

10          THE COURT:  Yeah, and I don't know -- I know that

11  the defendants had that proposed, that the cross-claims be

12  filed and denied, and third-party claims be deferred until

13  30 days following the Court's ruling on the consolidated

14  motion to dismiss.  I don't know if we can still do that or

15  not.  Just think about it.  Just do that to try to at least do

16  something with the third-party practice because that's still

17  going to be hanging out there.  And I don't know if we can

18  deal with that today pending the Rule 56(d) motion or not.

19  It's something for you to think about.  I know that was your

20  proposal, but I believe that proposal was made with the

21  optimistic view that maybe Gallagher & Kennedy would

22  withdraw -- yeah, I guess it would be withdraw the motion of

23  partial -- partial motion for summary judgment pending

24  resolution of the consolidated motion to dismiss, I believe.

25          MS. MAK:  And I agree with you, your Honor.  I think

1  that proposal was made.  But like you said, we had sort of had

2  the optimism that perhaps the Rule 56 motion would be

3  withdrawn.  But having to deal with that, I think we may not

4  resolve that.  At least the County is willing to consider what

5  proposals that we have currently.

6          But other than that, your Honor, other than what was

7  set forth in the joint report I have nothing to add.

8          THE COURT:  And here's what I intend to do.  And

9  once again, I'll hear from Mr. Lutz.  I'll hear from everybody

10  again on this.  With regard to the motion to dismiss, I'm

11  inclined to say that the order is that the motion -- the

12  consolidated motion to dismiss will be filed 30 days from

13  today's date.

14          To the extent that there are individualized issues,

15  the defendants are able to file a separate section regarding

16  those individualized issues or facts.  That the parties don't

17  anticipate going over the -- exceeding the page limit.  If you

18  do, just file something.  It's Judge Ezra, but I'm presuming

19  it may or may not, presuming it would be well-received.

20          And that the response -- or, excuse me, that the

21  reply would be 30 -- the response would be 30 days from the --

22  from the filing of the motion to dismiss and the reply 15 days

23  after the response.  I mean, so that's my thought.  Once

24  again, we can all talk about that before we finalize that

25  today.  So at least I think we can accomplish that.  That may

1    be all we can accomplish, but we can accomplish that.

2            Ms. Mak, is there anything else from your

3    standpoint?

4            MS. MAK:  No.

5            THE COURT:  Mr. Lutz, I know you're dying to come up

6    here so come on up.  Thank you.

7            MR. LUTZ:  Ignore everything Mr. Thomas said.  That

8    was going to be my opening remark, is just ignore Mr. Thomas.

9    Not actually.  And I would also take note that I'm not dying

10   to be up here, frankly.

11           But that being said, I wanted to just make a few

12   comments on what Mr. Kennedy had spoken about as well as some

13   of the procedural matters that your Honor has been discussing.

14           First, no problem with the 30 days from today's date

15   for filing the motions to dismiss.  That works.  If it turns

16   out that those motions look like they're going to exceed

17   because of individual issues, we'll file something requesting

18   some relief there.

19           Secondly --

20           THE COURT:  And 30 days to respond, 15 days to

21   reply, you're okay with that?

22           MR. LUTZ:  Perfectly fine with Prudential,

23   your Honor.

24           Secondly, please don't take silence to anything that

25   Mr. Kennedy asserted as acquiescence.

1            THE COURT:  I understand that.

2            MR. LUTZ:  Because I think there are some

3    significant factual differences there.

4            Third, in terms of procedurally, once we have the

5    motion to dismiss, I believe that I heard Mr. Kennedy

6    proposing, and I'm not 100 percent certain that this is the

7    case, that the motion to dismiss be decided and immediately we

8    decide the motion for partial summary judgment.  As Mr. Thomas

9    pointed out, there are a number of issues which will be part

10   of a 56(d) filing shortly that we think will require further

11   discovery, both factually and expert discovery.

12           One issue that you specifically focused on and

13   Mr. Thomas focused on was costs.  And it strikes me that in

14   the general course of things we would have an answer, we would

15   have third-party practice, we would have initial disclosures

16   which would include those kinds of cost disclosures to at

17   least give the defendants a basis for discovery as to the

18   costs that are allegedly incurred and whether those costs,

19   because it's focused on the cost themselves, were actually

20   necessary and in compliance with the NCP.

21           I would suggest that there's no reason, and

22   Prudential does not think it's necessity to proceed with

23   general discovery while motions to dismiss are pending.  And

24   in fact, that makes little sense from an efficiency standpoint

25   or from my client's pocketbook standpoint, but to the extent

1   that we are really looking at that, one helpful suggestion

2   might be a disclosure by plaintiffs as to costs so that we

3   actually know -- consistent with their initial disclosure

4   requirements, so we know what costs we're talking about when

5   we're looking at the motion for partial summary judgment.

6         And I would suggest that that should happen before

7   we consider the motion for partial summary judgment

8   irregardless -- or, not irregardless, regardless of whether

9   56(d) relief is granted.  So that was the suggestion I had for

10  your Honor.

11        THE COURT:  And let me follow up on that.

12        If Gallagher & Kennedy is inclined to agree with

13  that, they may not, what would be the timing of that

14  disclosure?

15        MR. LUTZ:  Well, your Honor, I think that we have a

16  motion to dismiss that's going to raise jurisdictional issues.

17        THE COURT:  Right.

18        MR. LUTZ:  I think for efficiency reasons it doesn't

19  make a lot of sense to force plaintiffs to do that prior to a

20  decision on that.  But within some time frame of that motion

21  to dismiss if necessary or if 56(d) relief is not granted,

22  that we receive that disclosure so that we know what it is

23  we're talking about as we're responding to the motion for

24  summary judgment.

25        THE COURT:  So, for example, something like 30 days

 1   after the ruling on the motion to dismiss?

 2          MR. LUTZ:  I would be fine with that, your Honor.

 3          THE COURT:  Okay.  Thank you.  Anything further,

 4   Mr. Lutz?

 5          And I appreciate and I recognize and I'm not trying

 6   to be cute here.  I understand there are some factual issues

 7   and issues regarding the interpretation of Judge Ezra's orders

 8   that I'm presuming you take -- that you don't necessarily

 9   agree what Mr. Kennedy had to say.  And I think that goes

10   beyond the scope of what we're here today, but appreciate your

11   position on that.

12          MR. LUTZ:  I appreciate that, your Honor.  And I

13   understood that you did.  I just didn't want my silence to

14   somehow be held against me in the future.

15          THE COURT:  No, your silence would never be held

16   against you.

17          MR. LUTZ:  I had a criminal law professor that told

18   me that once I think.

19          So with that, your Honor, I think that so long as we

20   have some sense of disclosures, I guess the other issue would

21   be an issue that Mr. Kennedy raised.  And that was he

22   mentioned that issues really haven't been joined in the case,

23   to be honest.  There's been no answers, no affirmative

24   defenses raised, any of those things.  Obviously, your Honor

25   raised third-party practice.  I think that will need to be

 1   addressed.

 2        My other suggestion would be that upon the -- or,

 3   concurrent with the issuance of an order with respect to the

 4   motions to dismiss, that maybe the Court set a scheduling

 5   conference immediately thereafter to address those procedural

 6   practical issues in terms of when we should answer, what

 7   should be done with third-party practice if necessary and

 8   56(d) relief is not granted, what the briefing schedule should

 9   be with respect to the motion for partial summary judgment.

10   And do that all at once in kind of a consolidated status

11   conference that we were anticipating today before we had all

12   of the filings.

13        THE COURT:  That's a very good idea.  So something

14   like a status conference.

15        MR. THOMAS:  Your Honor, can I make a suggestion?

16        THE COURT:  You can stay there, Mr. Thomas.  You can

17   stay there.  Thank you.  As long as we can hear you.

18        MR. THOMAS:  As I was sitting here, it occurs to me

19   that at least to some extent our 56(d) affidavits are likely

20   to address our uncertainty about what the alleged costs are

21   because -- so it may be -- I believe Mr. Kennedy would object

22   to being required to make any sort of disclosure.  I guess the

23   fallback if that is indeed the case, that we can include that

24   in our 56(d) proceeding.

25        And with respect to --

```
1              THE COURT:  Let me stop.  That's certainly the

2    simpler way to do it.  Then we deal solely with whatever

3    issues are ripe -- we don't, Judge Ezra will deal with

4    whatever issues are raised in the 56(d) motion.

5              MR. THOMAS:  Yes.  The sampling is a different

6    category for me.  We'd like to go regardless.  And hopefully I

7    was clear, but, you know, the City would prefer to avoid

8    third-party practice for as long as possible because it may

9    not be necessary.  But, of course, we will be -- we'll have to

10   think about that again if it turns out that we are denied

11   56(d) relief and there is a prospect of the summary judgment

12   motions being decided on the merits.

13             THE COURT:  Right.  And I do think we have to do

14   something today in case I forget.  What are we going to do

15   with third-party practice.  We may not reach a resolution, but

16   we have to have some thoughts.

17             MR. THOMAS:  Can we agree to meet again about

18   third-party practice deadlines after we know whether or not we

19   get 56(d) relief?

20             THE COURT:  Well, let's talk about that.  Let's talk

21   about that.

22             And Mr. Kennedy, hang on.

23             I'm sorry, Mr. Lutz, anything further from your

24   standpoint?

25             MR. LUTZ:  Nothing, your Honor.  Well, I guess I
```

1  would add what Mr. Thomas says makes sense.  I would presume

2  we'd have 56(d) relief which will be asked for on a expedited

3  basis prior to the motions to dismiss.  So if we, just after

4  the motions to dismiss, have that discussion, it seems like

5  that would meet with what Mr. Thomas is asking about.

6         THE COURT:  And that's great.  And then the idea of

7  maybe setting the status conference 15 days after the motion

8  to dismiss is ruled on.  And then we have the -- then, I think

9  that's what we need to deal with right now.  So, okay.  Thank

10 you very much.

11        MR. THOMAS:  One more on the timing of third-party

12 practice.

13        THE COURT:  Sure.

14        MR. THOMAS:  The County filed an answer and so

15 arguably the clock has been ticking for their right to join

16 third parties.  We probably want some clarity that, you know,

17 that the deadline for filing third-party claims without leave

18 will be extended to some time after the 56(d) issue would be

19 resolved.

20        THE COURT:  I would think something like that is

21 appropriate and we'll have to remember that.

22        Mr. Kennedy, please.

23        MR. KENNEDY:  I had overlooked that the County had

24 filed an answer.  We don't have any objection to them --

25 whatever, informally, we can discuss protection.

1           THE COURT:  We can do it formally in the order, I

2   think.  I mean, I think we can just say that with regard to

3   the answer filed by the County, that any third-party claims

4   are extended.  Marcia will help me out with the language, but

5   we'll figure that out.  Go ahead.

6           MS. MAK:  Your Honor, I was just added to this case

7   recently, but it was my understanding we did not file an

8   answer.

9           MR. KENNEDY:  I don't remember them filing an

10  answer.  I guess we could look at the document.

11          THE COURT:  We'll address that.  So we'll come back

12  to that.

13          Mr. Kennedy, let me just ask you, is everybody clear

14  now on the timing of the filing, the response, the reply for

15  the motion to dismiss?  Does anybody have any problems with

16  those proposes dates?

17          MR. KENNEDY:  No, sir.

18          THE COURT:  We've resolved that, if nothing else.

19          Go ahead, Mr. Kennedy.

20          MR. KENNEDY:  I'm not sure we have much objection

21  with regard to the Rule 56(d).  I didn't stand up and

22  interrupt, but the costs are just an issue.  I'm sure there

23  are going to be several issues where they say we believe we're

24  entitled to discovery.  There's no need to separate any of

25  them out.  They're all governed by Rule 56(d) just because of

1    the time frame we're in right now.

2           And to the extent they seek discovery that doesn't

3    relate to 56(d), there's no need to do it.  We're just going

4    to have to repeat it.  It's going to be duplicative.  There's

5    no need to do that.  So we're okay -- we're okay -- we're not

6    trying to limit, I've never tried to limit the scope of

7    what -- Rule 56(d) does that, but we're not trying to limit

8    the scope of what they asked for that's permitted by 56(d).

9           THE COURT:  Okay.  So I think -- go ahead,

10   Mr. Kennedy.  I'm sorry.

11          MR. KENNEDY:  And all we ask is that we have 30 days

12   to respond to that, to flush out your scheduling issue.

13          THE COURT:  Yeah.  I think we can say you have

14   30 days to respond to the Rule 56(d) motion.

15          MR. KENNEDY:  Yes.

16          THE COURT:  Judge Ezra is going to deal with that in

17   terms of the actual motion.  That's my understanding.

18          MR. KENNEDY:  Well, okay.  I didn't know that.  If

19   that's the way it's going to be --

20          THE COURT:  Well, that's --

21          MR. KENNEDY:  I thought this was a scheduling

22   conference for everything.

23          THE COURT:  Well, it was going to be, but we have

24   the issue -- and I'm thankful actually, Judge Ezra has revoked

25   the referral on most -- on all the motions which I'm thankful

1    for because I don't have to do it on an R-and-R basis.  You

2    don't have to do it twice.  It's quite helpful actually in

3    this case.  I'm not saying it's bad practice in other cases,

4    but it's good practice in this case.

5            So I believe, Mr. Kennedy, because of that, the

6    56(d) issue is going to have to be addressed to Judge Ezra

7    because I think he's going to be deciding the motion for

8    partial summary judgment, so he's the one who will address

9    that.  I think we're probably okay saying you'll have 30 days

10   to respond to that.  I don't think he's going to care that I

11   do that.

12           MR. KENNEDY:  That's all I'm asking.

13           THE COURT:  So we'll do that.

14           MR. KENNEDY:  That's all I'm asking.

15           THE COURT:  I understand.

16           MR. KENNEDY:  And --

17           THE COURT:  And then, let me just follow up on that.

18           Then to the extent, and maybe, Mr. Thomas, this is

19   to your point, to the extent that you believe that -- I think,

20   Mr. Thomas, some of what you were discussing, sampling, I

21   don't know whether or not that's included in Rule 56(d) or

22   not.  That all gets flushed out.  Perhaps that gets taken care

23   of in whatever Judge Ezra does with the Rule 56(d) motion.

24           MR. KENNEDY:  I think that's the proper place for

25   that.  It is discovery that is related to the issues as they

1    say in our motion for summary judgment.  So we're now on the

2    56(d) clock or within that room for purposes of discovery.

3    And I just think it's -- it's just not -- there's no reason to

4    do discovery beyond that.  We don't know who the parties are.

5    We're going to have to duplicate it possibly.  But when I say

6    that, I'm not trying to limit them in terms of what they seek

7    under Rule 56(d).

8              THE COURT:  Okay.  So then.

9              MR. KENNEDY:  So I believe that -- frankly, I'm a

10   little uncomfortable with the discussion about the subpoena

11   today because the party subpoenaed isn't here.  There's been

12   quite a bit of discussion about why that subpoena is

13   appropriate.  It's not directed to us.  It's directed to a

14   third party.  I'm a little uncomfortable with that.  I think

15   it fits perfectly within what we defined here.

16             MR. THOMAS:  Your Honor, can I briefly respond?  And

17   that is, you know, we can hold off on -- we're happy to fall

18   or stand on our discovery rights under 56(d), but given the

19   inflammatory description of the site that we heard today and

20   previously, I would not be happy to agree to anything that

21   might delay sampling of the Salt Canal.  The subpoena was

22   objected to by RID and by Gallagher & Kennedy.  If Gallagher

23   no longer objects to the subpoena, then I think that we can

24   probably arrange cooperatively with RID.  It's basically a

25   one-day event.  We've offered to reimburse them for any

1   internal overhead costs.  But you know, we need to understand

2   what's going on from a water quality perspective regardless of

3   everything else relevant to them.

4           THE COURT:  Let me stop you there.  Let me stop

5   there for a second.

6           I don't mean to digress, but, Ms. Mak, did you file

7   an answer?  Did you determine whether you did or not?

8           MS. MAK:  Your Honor, I'm still trying to figure it

9   out.

10          THE COURT:  That's okay.  I just didn't want to

11  forget you.  Don't let me forget you.

12          Mr. Kennedy, please, with regard to the sampling

13  issue, the sampling of the Salt Canal.

14          MS. MAK:  Your Honor, I have been informed that we

15  did not file an answer.

16          THE COURT:  So that resolves it.

17          Go ahead, please, Mr. Kennedy.

18          MR. KENNEDY:  The sampling issue is discovery.  It

19  is directed to RID who is not here.  We continue to have a

20  dialogue about it.  And so I said there were two really

21  important points earlier; there's a third important point.

22          Gallagher & Kennedy and RID are not making the

23  rules.  We are doing what we've been told to do by ADEQ.  All

24  of these arguments about drinking water, all this and the

25  sampling, it's all been decided.  It's all been argued before.

1  We're doing what we've been told to do.  Lest you be puzzled,

2  and I suspect you aren't, and "puzzled" is the word Mr. Thomas

3  used, those orders were entered years ago for us to follow.

4  Today, what's going on there today doesn't make any difference

5  for the costs that we've incurred before today, your Honor.

6         And, your Honor, we've been pumping for three years,

7  I would hope there would be improved conditions.  But it has

8  nothing to do with our motion.  And I understand this is

9  probably going to be argued with regard to the 56(d) motion,

10  but I want to respond to this today.  There's all this

11  discussion about what's the quality today.  Well, I hope it's

12  better.  We've been pumping for three years off and on during

13  the season when we have money to do it.

14         And the condition today does not affect -- it's

15  totally irrelevant to the condition when the orders were

16  entered that we've been following and for which we incurred

17  the costs.  That's the third point I would ask --

18         MR. THOMAS:  Mike that's not the case.

19         THE COURT:  Hang on, Mr. Thomas.

20         Go ahead.  I don't mean to interrupt.

21         MR. KENNEDY:  No.  I'm finished.

22         THE COURT:  Let me ask you this, Mr. Thomas:  With

23  regard to any further discovery at all, other than what may be

24  contained in the 56(d) issue which will take care of itself in

25  that forum, is there any additional -- and I guess, Ms. Mak

 1    and Mr. Lutz, I'll include you as well, is there any other

 2    discovery that needs to be done in order to get the issues

 3    before Judge Ezra fully and properly briefed on the motion to

 4    dismiss?

 5              And let me just follow up on that because here's my

 6    thought:  Is that we're going to have to reconvene after there

 7    is a resolution or a decision on the motions to dismiss.  My

 8    thought is that we just say no further -- and we're still

 9    going to have to address third-party practice, I understand.

10    But that no further discovery until there has been a

11    resolution or a decision on the motion to dismiss and

12    Judge Ezra rules on the 56(d).  If additional discovery is

13    being sought by anybody other than what is ordered by

14    Judge Ezra in the Rule 56(d) -- and I don't want to kick the

15    can down the road, but we deal with that after we set the

16    motion to dismiss.  I don't necessarily -- I am kicking the

17    can down the road, I guess, but is there anything that needs

18    to be done?  I understand it takes time to do these things,

19    et cetera, but --

20              MR. THOMAS:  Your Honor, I can't think of any other

21    discovery besides that authorized by 56(d) that we would need

22    to undertake.  But if we're going to be limited to 56(d)

23    relief, it seems to me the proper course of action is -- with

24    respect to the subpoena is if RID objects, they can seek

25    relief or we can come back and move to compel.

```
1              THE COURT:  That's fine.  That's fine.  If we need
2    to do that, we'll be happy to do that.
3              But can we agree other than that issue, that the
4    discovery is going to be -- except for whatever issues you may
5    bring to me, that discovery is going to be -- there's no
6    further discovery pending a decision on the motions to
7    dismiss, 56(d) issue will take care of itself.  The subpoena,
8    if that's an issue, bring it to me.  And then we'll set a
9    status conference 15 days after a ruling on the motion to
10   dismiss to discuss all of these issues.
11             MR. THOMAS:  Yes, that works I think.
12             THE COURT:  That -- Mr. Kennedy, I'm sorry, before I
13   lose my train of thought.  And that would resolve the issues
14   of the timing of the 56(d), the subpoena, any other issues out
15   there.  Still need to address third-party practice which we
16   can reach something on that.
17             Please, go ahead, Mr. Kennedy.
18             MR. KENNEDY:  No.  No.  I think 15 might be a little
19   short.
20             THE COURT:  Okay.
21             MR. KENNEDY:  Maybe 30.
22             THE COURT:  That's fine.
23             MR. KENNEDY:  But I want to make sure that sometimes
24   what seems clear to me isn't what seems clear to others.
25             THE COURT:  I agree.
```

```
 1              MR. KENNEDY:  And we're going to proceed apace with
 2    both of these motions, and there is a 56(d) issue over here
 3    that we anticipate.
 4              THE COURT:  Right.
 5              MR. KENNEDY:  But it's also possible that these
 6    motions get resolved at the same time.
 7              THE COURT:  That's up to Judge Ezra, but that's
 8    certainly possible.
 9              MR. KENNEDY:  But I just don't want to do anything
10    or agree to anything that somehow --
11              THE COURT:  One triggers --
12              MR. KENNEDY:  -- one puts the motion for summary
13    judgment behind the other.  It does seem like it could take
14    longer, but I don't know Judge Ezra's schedule, and I just
15    don't want there to be any misunderstanding or presumption of
16    anyone that this is -- rule out or eliminate the possibility
17    that this could all happen at once.  But I agree to that
18    conference and 15 or 30 days, and at that point in time we'll
19    also be able to input what's going on with the Rule 56 -- with
20    our motion for partial summary judgment.
21              THE COURT:  I agree.
22              MR. KENNEDY:  And we can input that.  That's
23    basically what we asked for in the joint report.  So we're
24    fine with that, your Honor.
25              THE COURT:  And I appreciate what you're saying.  It
```

1    was not my intent and sometimes it's not crystal clear what

2    I'm saying, so my intent was not that something at the status

3    conference after the resolution -- the decision, excuse me, on

4    the motion somehow triggers the Rule 56.  Those are parallel

5    tracks as I understand it.  They may not be going at the same

6    time or get resolved at the same time.

7              And Mr. Lutz, it's not my intent that those trigger

8    each other.  I think they're going to be going on somewhat

9    simultaneously.

10             MR. LUTZ:  Your Honor, I guess I'm now lost.  The

11   motion to dismiss which raises jurisdictional issues by

12   necessity has to be decided before the motion for partial

13   summary judgment.  It can concurrently -- the 56(d) I don't

14   have any problem with, but I don't see any efficiency in

15   concurrently considering a motion to dismiss and motion for

16   partial summary judgment in which my client hasn't answered,

17   and the parties.  And that's what I hear Mr. Kennedy saying,

18   and I'm not sure where we are.

19             THE COURT:  Here's part of the problem, is I'm not

20   deciding those issues either.  Judge Ezra will be.  So

21   whatever time he needs to resolve those issues, I do not

22   anticipate that they will necessarily be moving at the same

23   time.  But you have the Rule 56(d) which will be out there and

24   be decided upon, and then we have the motion to dismiss.

25             Go ahead.  Maybe I'm not being clear.

```
 1              MR. LUTZ:  One question raised by Mr. Kennedy
 2    indicated that they would like 30 days to respond to the 56(d)
 3    motion.
 4              THE COURT:  No, I don't think that's what he said.
 5    Oh, I guess he did say that.  I'm sorry.
 6              MR. LUTZ:  And my concern is that even if we timely
 7    file the 56(d) motion, our time to respond to that motion for
 8    partial summary judgment runs in approximately a week.  To the
 9    extent that Gallagher & Kennedy is taking 30 days to
10    respond --
11              THE COURT:  I see.
12              MR. LUTZ:  -- can we at least put in the order a
13    recognition our time to respond is delayed until such time as
14    the --
15              MR. KENNEDY:  The joint report says that it's going
16    to be filed -- the 56(d) motion is -- they intend to file it
17    on the day that the response is due.
18              And to the extent that the question from Mr. Lutz is
19    whether I have an expectation that their response will remain
20    due on that same day, no.  It's my understanding, although
21    there might not be great case law on this, but I am fine that
22    all they have to do is file something timely, a 56(d) motion
23    or response in 30 days -- on the 30th day.  And if it's a
24    56(d) -- if it's a 56(d) motion, I'd like to have 30 days.
25    And if it's a response, we'll reply within the time frame
```

 1   permitted by the rules.  I guess it's 15 days.

 2          THE COURT:  I don't think -- let me just stop you

 3   right there.  I don't think Judge Ezra is going to mind --

 4   I'll defer to Marcia -- if we go ahead and set forth the times

 5   to respond to the Rule 56(d).  So maybe we can agree and get a

 6   consensus on that.

 7          MR. KENNEDY:  I'm not going to, on the -- on

 8   October 13th say, Where's your response?  No.  The 56(d)

 9   response is adequate for us, your Honor.

10          THE COURT:  So here's what we're going to do, just

11   to back up.

12          And Mr. Lutz, I appreciate.  Thank you for doing

13   this.

14          Just to back up, we've got the motion to dismiss

15   issue revolved.  It's going to be filed 30 days from today's

16   date; 30 days to file a response; 15 days to file reply.

17   We're good with that.

18          We have now a pending motion for partial summary

19   judgment.  Do you want to set a date as to when the opposition

20   or response is due to that?

21          MR. KENNEDY:  The joint report says they planned to

22   do it by the 12th.

23          MR. THOMAS:  We had been planning to file a 56(d)

24   response and also a request for expedited consideration, so we

25   knew whether we had to respond on the merits.

```
1                    THE COURT:  Exactly.

2                    MR. THOMAS:  So can we -- and we're fine with filing

3      the 56(d) materials on or before the 12th.

4                    THE COURT:  Of October.

5                    MR. THOMAS:  Can we tie the deadline for full

6      response on the merits to whenever Judge Ezra decides yea or

7      nay on the 56(d) or do we need to pick a date certain today?

8                    THE COURT:  I think actually it's better to do

9      sometime after the ruling on the 56(d).

10                    MR. KENNEDY:  Yeah, I've only looked at this

11      briefly, and I'm not entirely sure what the law is.  But what

12      I'm willing to do is accede to their request.

13                    THE COURT:  I think procedurally we can --

14                    MR. KENNEDY:  It doesn't make sense to have them

15      respond with an outstanding --

16                    THE COURT:  I agree.

17                    MR. KENNEDY:  -- 56(d).  So I'm amenable.  We're

18      agreeable to that, your Honor.  We would like it to be

19      October 12 or 13, whatever the day is in the joint report.

20                    MR. THOMAS:  Yeah.  We don't require additional time

21      for the 56(d) filing, I think.

22                    MR. KENNEDY:  And the response of the motion can be

23      held in abeyance pending resolution of the 56(d) motion.

24                    THE COURT:  Or X number of days after the ruling on

25      the motion, the Rule 56(d).
```

1          MR. KENNEDY:  Well, the problem is if it's denied,

2    that's -- that works.  If it's granted, then there's

3    discovery.  We can't have a period of time that we're

4    operating within.  So I'm fine to holding it -- I don't know

5    if the Court is --

6          THE COURT:  Actually.

7          MR. KENNEDY:  -- has a problem with that.

8          THE COURT:  No.  Maybe what we should do, I'm going

9    to look to Marcia to help me out here, maybe we should also

10   set a status conference after the -- no.  Rule 56(d) motion?

11   Well, come on up.

12         MR. THOMAS:  And decide a briefing schedule at that

13   time.

14         THE COURT:  That's what I was thinking.

15      (Pause.)

16         THE COURT:  So how about this:  If the Rule 56(d)

17   motion is denied, then you have X number of days.  And if it's

18   granted, then we set a status conference.

19         MR. THOMAS:  That makes sense to me.

20         MR. KENNEDY:  That's fine.

21         THE COURT:  And then I think if it's granted in part

22   and denied in part, we set a status conference.  Anything but

23   a denial.

24         MR. KENNEDY:  Yes.  That's great.

25         THE COURT:  And so if it's denied, oppositions,

```
 1   responses due how many days?  Thirty days?  Fifteen days?
 2   What?
 3               MR. THOMAS:  Fifteen is fine with me.
 4               THE COURT:  Okay.
 5               MR. KENNEDY:  Agreeable, your Honor.
 6               THE COURT:  Okay.  And then reply within how
 7   many days, Mr. Kennedy?
 8               MR. KENNEDY:  Probably 15 only because much less
 9   than 15, if you've got something planned or you're gone, you
10   can work around within 15.
11               THE COURT:  And I presume, Mr. Thomas, Ms. Mak,
12   Mr. Lutz, you're okay with the 15?
13               MR. LUTZ:  Yes, your Honor.
14               THE COURT:  And then if the motion -- if the
15   Rule 56(d) motion is granted I guess in whole or in part,
16   we'll have to set a status conference within so many days.
17   Thirty days?  Fifteen days?
18               MR. KENNEDY:  Well, here I might suggest 15 days --
19               THE COURT:  I agree.  I agree.
20               MR. KENNEDY:  -- to get ahead of discovery.
21               THE COURT:  So we'll set that 15 days after that.
22               And then we are going to set -- and you're right,
23   Mr. Kennedy.  We also ought to revisit -- we'll set a status
24   conference within 30 days after the ruling on the motions to
25   dismiss.  We have two potential status conferences out there.
```

1          MR. KENNEDY:  Right.  And we can address all those

2     issues.  Third-party practice, I don't think the clock is

3     running on anything.

4          THE COURT:  Well, I guess I just want to be sure

5     that I'm not doing anything wrong with regard to third-party

6     practice.  We'll come back to that.  We'll come back to that.

7          Are there any other issues other than maybe the

8     third-party practice which we may or may not be able to reach

9     any -- maybe we should do nothing about.

10         MR. KENNEDY:  I have a whole page of notes to

11    respond to Mr. Thomas, but I'll save those.

12         THE COURT:  I appreciate that.  And I understand

13    that you would have a response.  I'm presuming you don't agree

14    with him entirely.

15         MR. KENNEDY:  Yes.  As long as you're not puzzled by

16    that.

17         THE COURT:  I'm not puzzled by that.  Puzzled by

18    other things; I'm not puzzled by that.

19         So let me ask.  Marcia, do you have all these dates?

20    Do you got them all down?  Okay.

21         Does anybody have any questions other than trying to

22    reach some -- what we can do maybe, if anything, about

23    third-party practice, about any of the upcoming dates, any

24    other concerns?

25         Mr. Kennedy?

1              MR. KENNEDY:  No.  No, your Honor.

2              THE COURT:  Mr. Thomas?

3              MR. THOMAS:  No.

4              THE COURT:  Ms. Mak?

5              MS. MAK:  No, your Honor.

6              THE COURT:  And Mr. Lutz?

7              MR. LUTZ:  No, your Honor.

8              THE COURT:  What about the third-party practice?  Do

9    we just do nothing?  I mean, what do we do about that?

10             Mr. Thomas.

11             MR. THOMAS:  Since I was mistaken about the County

12   having answered, I don't think the clock is running.  But it

13   also sounds like we're all agreed that waiting until we have a

14   discussion about proper deadlines for that won't be deemed to

15   somehow affect -- we shouldn't be -- we don't want to hear an

16   argument that we unduly delayed on seeking leave or adding

17   third-parties by virtue of agreeing to the schedule.

18             MR. KENNEDY:  Perhaps to avoid that we could all

19   agree that this, the third-party practice and related

20   cross-claims and related issues, can be raised by any party at

21   the first status conference, whichever of those two status

22   conferences comes first.  I mean, we just will raise it, raise

23   those issues when it becomes meaningful to raise them.  And we

24   can make it a tentative agenda item.  And if it's not time

25   yet, we can agree that it's not time yet.  Or one side can

1    argue that it is and the other side can disagree.  I would

2    just make it an agenda item at the first status conference.

3              THE COURT:  And my suggestion would be to address

4    the issues with the understanding that the defendants are not

5    prejudiced in any way by agreeing to any extensions as to

6    their potential third-party practice.

7              MR. KENNEDY:  That's fine.

8              THE COURT:  I think that's your concern, Mr. Thomas.

9              MR. THOMAS:  Yes.  And if Mr. Kennedy is fine with

10   that, I think that works for us.

11             THE COURT:  Mr. Kennedy, are you okay with that?

12             MR. KENNEDY:  Yes.

13             THE COURT:  So we'll incorporate that into the order

14   as well.

15             Let me just ask Marcia, who is taking much better

16   notes than me, is there anything else we need to address?

17             Okay.  Mr. Kennedy, anything further from your

18   standpoint?

19             MR. KENNEDY:  No.  Thank you for your time.

20             THE COURT:  I appreciate your time.

21             Mr. Thomas, anything further?

22             MR. THOMAS:  Nothing, your Honor.  Thank you.

23             THE COURT:  Ms. Mak?

24             MS. MAK:  No, your Honor.

25             THE COURT:  Mr. Lutz?

1          MR. LUTZ:  No, your Honor.

2          THE COURT:  Okay.  Well, thank you very much.

3          I know it's an inconvenience for all of you to come

4    down here.  Everybody is from Phoenix but me.  Thank you very

5    much.  It's a pleasure to see you.

6          We'll stand at recess in this matter.  Thank you.

7          (Proceedings concluded at 3:46 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                       C E R T I F I C A T E

2

3              I, Cheryl L. Cummings, certify that the

4    foregoing is a correct transcript from the record of

5    proceedings in the above-entitled matter.

6

7                       Dated this 13th day of October, 2018.

8                       /s/Cheryl L. Cummings

9                       Cheryl L. Cummings, RDR-CRR-RMR-CRC-CRI
                        Federal Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```